that the electors of the town had notice of the intention to submit the questions, and that they acted upon such notice, and expressed their will in the mode prescribed by statute, and we have found no informalities sufficient to warrant us in saying that the conclusion reached by the electors was not efficient. In People v. Wood, 148 N. Y. 142, 42 N. E. 536, it was said by the court:

"We can conceive of no principle which permits the disfranchisement of innocent voters for the mistake or even the willful misconduct of election officers in performing the duty cast upon them. The object of popular elections is to ascertain the popular will, not to thwart it. The object of election laws is to secure the rights of duly-qualified electors, and not to defeat them. Statutory regulations are enacted to secure freedom of choice and to prevent fraud."

We think the electors of the town of Moravia expressed their will in respect to the questions submitted to them, and that it cannot be said that the election was irregular or inefficient. It seems to be the policy of the law that such questions shall be submitted only once in two years to the electors of a municipality.

The views already expressed indicate that the special term committed no error in refusing the peremptory writ of mandamus requiring the clerk to call a special town meeting for the purpose of a resubmission of the questions.

Order affirmed, with taxable costs. All concur.

---

(41 App. Div. 158.)

PRUEY v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Appellate Division, Fourth Department. May 24, 1899.)

RAILROADS—ACCIDENT AT CROSSING—CONTRIBUTORY NEGLIGENCE.

On a dark morning, plaintiff's intestate, on his way to work, approached defendant's eight parallel tracks where they crossed a street, and where he was daily accustomed to cross. The gates were down, as they usually were, at that time in the morning, whether trains were passing or not. He waited for a freight train to pass on the first track, and then started to cross, when he was struck by a locomotive backing against him on the second track from the direction which the freight was going. The street lights had gone out, and the engine, running at 20 miles per hour, carried no light on the rear of its tender, and gave no warning of its approach. No one saw the accident, and there was no direct proof that he looked and listened for the engine. *Held* to warrant a finding that deceased was free from contributory negligence.

Adams, J., dissenting.

Appeal from trial term, Oneida county.

Action by Annie Pruey, as administratrix of the estate of Leonard Pruey, deceased, against the New York Central & Hudson River Railroad Company for the death of her intestate. From a judgment for plaintiff, and from an order denying a new trial, defendant appeals. Affirmed.

The plaintiff's intestate was hit by a backing locomotive and tender, in Genesee street, in the city of Utica, on the morning of the 8th of February, 1894. The general direction of Genesee street is northeast and southwest. It is crossed by eight parallel tracks of the defendant. The Mohawk river is immediately north of these tracks, and the bridge across this stream forms a part of the street. Between the bridge and the nearest track the defendant

maintains gates, which were down at the time of the injuries to the decedent. He came across the bridge, waited for a passing freight train going westerly on the first track, and then started to cross the street diagonally, going north-westerly, when he was hit by the engine backing on the second track from the bridge. The morning was intensely dark, but this engine carried no light on the rear of the tender, and no warning of its approach was given. No one saw the accident, although the witness Creighton, with his milk wagon, had crossed the bridge, alighted from his wagon, stood awaiting the passing freight train, and saw Pruey, the decedent, immediately after he was injured. The intestate survived the accident only a few hours.

Argued before HARDIN, P. J., and ADAMS, McLENNAN, and SPRING, JJ.

C. D. Prescott, for appellant.

P. C. J. De Angelis, for respondent.

SPRING, J. The negligence of the defendant is proved by the undisputed testimony in the case. The morning was dark; the only street light that could be of any service was usually out at this time in the morning; the street crossing was an important one, with eight parallel tracks over it; the defendant's gates were usually down at this time; and yet the locomotive which crashed into Pruey was scudding along backward, at 20 miles an hour, without giving any signal of its approach, and without any light. Crass carelessness of this kind must be weighed in the balance when we are seeking to enforce the stringent rule imposed upon a wayfarer to be vigilant as he approaches a railroad crossing. While the rule obtains, and freedom from scrupulous watchfulness cannot be baldly inferred, yet the personal representative of a man familiar with the surroundings, accustomed to observe and give heed to signals indicating an oncoming train, cannot be held to the strictest accountability, where those in charge of the train are confessedly derelict in their duty, and where there is no observer of the conduct of the decedent. Pruey had passed over this crossing to his work daily for three years, at about this time each morning. He was therefore familiar with the danger at this point, he knew from long experience the almost invariable habit of defendant's servants to give the customary signals of an approaching train, and he was aware that a light was present upon it. This very familiarity with these facts and with the surroundings would unconsciously lessen somewhat the circumspection he would otherwise observe. He must still be watchful; but, in determining whether he fairly met the duty devolving upon him, we must necessarily take into consideration the negligence of defendant's agents and his own obvious wont to rely upon these warnings. On the morning in question, as Pruey came over the bridge, the gates were down. This was of no significance, as the evidence, without uncontradiction, shows the gate tender, at this time in the morning, was ordinarily unmindful of his duties, as the gates were then generally down. Again, a freight train was passing, and Pruey undoubtedly waited for that to go over the highway, and then endeavored to cross diagonally, in his customary manner, when he was hit by the backing locomotive, which was hauling a

caboose on the second track. These facts are mainly inferential, but are confirmed by his daily mode of going to his work and the fact, Creighton testified, he was in the street when he was hit. There is no proof that he looked and listened as he neared this track; and the contention of defendant's counsel is that we must depend upon conjecture entirely to reach a finding that the plaintiff's intestate fulfilled the duty of looking and listening as he approached this crossing. In a case where death ensues as a result of a collision of this kind, and where there is no eyewitness of the occurrence, there is a relaxation of the rule requiring strict proof that the decedent was vigilant and observant as he advanced towards the track. The regulation exists ·in its integrity; but the proofs presented may be inferential, may be dependent upon circumstances, and still be adequate to satisfy the court of the absence of contributory negligence. As was said in Noble v. Railroad Co., 20 App. Div. 42, 46 N. Y. Supp. 647:

. "In actions to recover damages for negligence resulting in death, where there are no eyewitnesses of the accident, the freedom of the deceased from contributory ngligence may be established by proof of facts and circumstances from which it may fairly be inferred that the deceased was not at fault." Wieland v. Canal Co., 30 App. Div. 85, 51 N. Y. Supp. 776; Chjsholm v. State, 141 N. Y. 246, 36 N. E. 345.

But in this case there are other facts which relieved the plaintiff's intestate from the duty of looking and listening for this engine. The morning was dark, foggy, misty, and, according to some of the witnesses, cimmerian in its density,—a darkness quite common in this latitude on a muggy, foggy morning, at 6 o'clock, in the early part of February. John Pruey, the son, testified:

"I remember the kind of day it was on the morning of my father's death. It was very dark and misty, and warm. It had been raining through the night. The snow was about all thawed away. I observed the tracks of the Central road. The snow was about all gone. What little there was there was all black with smoke and dirt and one thing and another."

The witness Sultenfuss described the condition as follows:

"That morning about 6 o'clock it was foggy, with the wind blowing from the east. It was very dark, so dark you could not distinguish an object very well at a distance of twenty feet. It was foggy. The snow was melting. There . was ice on the sidewalk. It was rainy and foggy like."

The witness Decker in this manner:

"I got up about half past 6. It was a very dark morning,—very cloudy. There had been a thaw. There was snow enough for sleighing; but there had been quite a thaw, and the snow was dark and dirty on top,—muddy. On the railroad and on the bridge there was no snow. The snow in the immediate neighborhood of the crossing was slush more than anything else. It was dark from the dirt that was on it."

It is therefore a legitimate deduction from the evidence that the morning was very dark; and there is much force in the contention that to look for this engine would have been useless, as it could not have been seen. It is urged, however, that Creighton's testimony shows he observed this approaching train. That testimony simply made a contradiction in the evidence, and the credibility of these witnesses was for the jury to pass upon. McNamara v.

Railroad Co., 136 N. Y. 650, 32 N. E. 765. And Creighton was viewing the approaching engine, not from the rear, but by a side view, which may have enabled him to catch a glimmer of the headlight. The philosophy of the rule requiring a traveler approaching a railroad crossing to look and listen for a train, before venturing upon the tracks, rests upon a common-sense foundation. These were regarded as the most efficient acts in demonstrating the vigilance of such traveler and most likely to apprise him of danger. If to look would be futile, then the person is absolved from an obligation which would be wholly mechanical. If the view is obstructed, so a person could not see a coming train, unless he possessed the strength of vision described by the imperturbable Weller, then the failure to look is not carelessness. The same principle applies where to listen would be of no practical moment. Smedis v. Railroad Co., 88 N. Y. 13; Wieland v. Canal Co., 30 App. Div. 85, 51 N. Y. Supp. 776. As was said in the Smedis Case, at page 19:

"While it is true that a traveler, on approaching a railroad crossing, is bound to look and listen for an approaching train, before undertaking to cross, it is only where it appears from the evidence that he might have seen, had he looked, or might have heard, had he listened, that a jury is authorized to find that he did not look and did not listen."

The freight train had just passed the crossing as Pruey was struck. The rumbling noise and the clatter of that large train quite probably drowned the lesser noise of the locomotive which ran down upon decedent. The darkness of the night, the absence of artificial light, the direction and force of the wind, and the din of the passing freight train, in connection with the obvious negligence of the defendant, were sufficient to warrant a submission of this case to the jury. In addition to the authorities already cited, the following tend to sustain the proposition that there was a question of fact in this case: Davis v. Railroad Co., 47 N. Y. 400; Fejdowski v. Canal Co., 12 App. Div. 589, 43 N. Y. Supp. 84; Harper v. Railroad Co., 22 App. Div. 273, 47 N. Y. Supp. 933; Judson v. Railroad Co., 158 N. Y. 604, 53 N. E. 514. In the Daniels Case, 125 N. Y. 407, 26 N. E. 466, upon which some stress is laid, the flagman warned the intestate of the approach of the train. It could be distinctly seen a long distince from the crossing. There was nothing to interfere with the view. The slightest observation, the slightest caution, would have apprised the traveler of its coming. While his deafness prevented him hearing, his eyesight was apparently unimpaired; but he went in front of the train without any care or vigilance. I think there is a wide variance between the facts of the two cases.

The learned trial judge instructed the jury clearly as to the caution required of a person approaching a railroad crossing. He then stated the rule which I have invoked, discussing it as bearing upon the subject of the intestate's contributory negligence, stating "that, if he had listened, he could not have heard the approaching train, or, if he had looked, he could not have seen the approaching train," then the jury were permitted to find that Pruey was not chargeable with negligence. The trial judge kept very

fairly within the facts upon which this contention was based, and did not óverstep the rule of law applicable to this case.

The judgment and order are affirmed, with costs to the respondent. All concur, except ADAMS, J., dissents.

HARDIN, P. J. (concurring). I think the case in hand differs from Daniels v. Transit Co., 125 N. Y. 409, 26 N. E. 467. In that case it was said that the evidence "is indisputable that he could have seen the approaching train" if he had looked. That fact is not so clear from the evidence in the case before us. In Rodrian v. Railroad Co., 125 N. Y. 529, 26 N. E. 741, it was said that slighter evidence of compliance with the duty cast upon the plaintiff "might be deemed sufficient" where the injured person was not alive and competent to testify. In the case in hand the trial judge very carefully submitted the question of the deceased's freedom from contributory negligence to the jury. He said:

"There is no witness to speak upon that subject. But there is another rule of law which bears upon this question of contributory negligence, and that is, if a jury is entitled to find upon the evidence that it would have done a person no good to look or listen, that, if he had listened, he could not have heard the approaching train, or, if he had looked, he could not have seen the approaching train, then it is permissible for them to find that the person killed was not guilty of contributory negligence, which would bar a recovery for his death; and that is really the rule which is invoked by the plaintiff in this case. It is said that, under the circumstances of the approach of this engine and locomotive, the darkness, the noise of the passing freight train upon the other track, the absence of lights, or the sounding of a bell or whistle upon this engine, which backed down upon the track, it would have been practically impossible for this intestate, by using his eyes and ears, as I have suggested, to detect its approach in time for him to have escaped the accident. If you should find that that was so, then, as I have suggested, it would be permissible for you to find that this intestate was not guilty of contributory negligence."

There is not absolute certainty in the testimony of Creighton as to where he was looking at the time he made the observations, nor exact evidence of the location of the deceased at the time of the observations testified to by Creighton. The interpretation of the evidence bearing upon the circumstances attending the accident was for the jury, and it ought not to be said, as matter of law, that the deceased was guilty of contributory negligence, or that the evidence did not warrant the jury in finding that he was free from contributory negligence. Greany v. Railroad Co., 101 N. Y. 419, 5 N. E. 425; Kellogg v. Railroad Co., 79 N. Y. 72; Beckwith v. Railroad Co., 54 Hun, 446, 7 N. Y. Supp. 719, 721, affirmed 125 N. Y. 759, 27 N. E. 408; Judson v. Railroad Co., 158 N. Y. 604, 53 N. E. 514. In the course of the opinion delivered in the latter case, the Kellogg Case is referred to, and Judge Martin says that the Kellogg Case held:

"It is not, as a matter of law, negligence for a person approaching a railroad in a carriage upon a highway to fail to stop, but that his omission to do so is a fact to be submitted to the jury. The duties which rest upon a traveler attempting to cross a railroad are there stated, and it was, in effect, said that he is not bound to exercise the greatest diligence, but only such as a prudent man approaching such a place would ordinarily exercise, and that, even where he could probably have avoided the accident by stopping, he is not, as a matter

of law, required to do so, and that the courts of this state have so held; but if he ought to stop, and he omits it, it is a fact to be submitted to the jury with the other facts in the case bearing upon that question."

He also refers, in the same opinion, to Stackus v. Railroad Co., 79 N. Y. 464, and he refers approvingly to the opinion of Church, C. J., and quotes from that learned judge the following language:

"Whether he ought to do any or all of these things in a given case, in order to relieve himself from the charge of negligence, is for the jury to decide, in view of the circumstances developed."

Near the close of the opinion he adds:

"As we have already seen, the plaintiff was not bound to the greatest degree of diligence which he could have exercised, but to exercise only such care as a prudent man approaching such a place would."

The case seems to have been carefully tried by the learned trial judge, and closely and carefully submitted to the jury; and while the case is close on its facts, and may be regarded as a border case upon the question of whether the evidence interpreted by reading it would lead to the conclusion that the deceased was not free from contributory negligence, yet, under all the circumstances disclosed, I incline to the conclusion that whether the plaintiff was free from contributory negligence was a question of fact properly confided to the jury. The jury having found in favor of the plaintiff, I am disposed to give my vote in favor of sustaining the verdict.

ADAMS, J. (dissenting). Genesee street, the principal thoroughfare in the city of Utica, is six rods in width, and runs northeast and southwest. The defendant's tracks, eight in number, cross this street practically at a right angle. North of the tracks is the Mohawk river, over which Genesee street is carried by means of a bridge, on which there are two driveways for teams and two passageways for pedestrians. The plaintiff's intestate, who was a man 51 years of age, in good health, and in the full possession of all his faculties, was, at the time of his death, a cook in the employ of a restaurant keeper whose place of business was on Genesee street south of the railroad tracks, and opposite what is known as "Bagg's Square." The deceased resided with the plaintiff, who was his wife, on Genesee street, north of the Mohawk river, and about 10 minutes' walk from his place of business. For some three years prior to the accident he had been accustomed to go to his work at about 6 o'clock in the morning, and on the 8th day of February, 1894, he left his home at the usual time, and started in the direction of the crossing. A milkman entering the city from the north passed over the river bridge at about the same time, and, finding the railroad gates down and a freight train passing westward on the first track south of the bridge, stopped his horse at a point about 10 feet north of the gates, got out of his sleigh, and took hold of his horse's head while the train was passing. As the caboose of the freight train passed west of the gateman's tower, a structure standing on a line with the east end of the bridge, an engine with a caboose attached, going east, passed over the crossing on the second track. This engine was running at the rate of 20 miles an hour, and was moving backward, with no light on the rear

end of the tender, and, as the evidence tends to show, without giving any signal of its approach. As it passed the caboose of the freight train, the milkman saw an object fluttering in the air, and heard some one cry out, "Oh, pick me up!" He ran at once to the object, which was then lying by the side of track No. 2, and which proved to be the plaintiff's intestate, who had been struck by the engine going east, and was so seriously injured that he died in consequence thereof before the day closed.

In considering the one serious question which this case presents, it may be assumed that the evidence amply sustains the conclusion reached by the jury that the defendant was chargeable with negligence in moving its engine over Genesee street without giving the customary signals; but, in cases of this character, the presence of negligence upon the part of the defendant is no excuse for the absence of care upon the part of the person injured; and, unless this rule, which has been iterated and reiterated by the courts from time out of mind, is to be abandoned, it would seem as though this were a case in which it ought to have some binding force. So far as the record discloses, no one saw the plaintiff's intestate until he was hurled through the air by the engine with which he came into collision. Exactly where he was when he was struck, how he reached that point, and what precautions, if any, he took for his own protection, does not appear. This much was conceded by the plaintiff's counsel upon the trial, and is not now controverted. It is insisted, however, that, notwithstanding the absence of any affirmative evidence of the exercise of care upon the part of the deceased as he approached the crossing, the question of contributory negligence was one of fact, and that, as such, it was properly submitted to the jury. This contention, as I understand it, is based, first, upon the proposition that the deceased was excused from looking and listening for the engine which struck him, inasmuch as the situation was such that he could neither have seen nor heard it had he looked and listened, and upon the further proposition that the circumstances attending the accident were such as to permit the inference that due caution was observed by the deceased as he attempted to make the crossing. It is undoubtedly the rule that a traveler upon a highway, who is about to cross the tracks of an intersecting railroad, is absolved from the necessity of looking and listening for approaching trains, when the physical conditions surrounding him are such as to prevent his seeing or hearing a train if one were approaching (Smedis v. Railroad Co., 88 N. Y. 13), and the learned trial justice instructed the jury in this case that if the evidence satisfied them that it was practically impossible, by reason of existing circumstances, for the deceased, by using his eyes and ears, to have detected the approach of the engine which struck him in time to have avoided the accident, they might find that he was not guilty of contributory negligence. I am by no means satisfied, however, that the plaintiff's recovery can be sustained upon any such theory, for the reason that the evidence in the case will not permit the conclusion that the engine could not have been seen or heard by the deceased, had he looked and listened. It is true that the morning was dark and misty; that the locomotive was moving backward, with no

light on the end of the tender; that the track was moist with snow, or rain; and that no bell was ringing or whistle sounding. But, with all these circumstances present, the facts remain that between the first track south of the bridge, which is designated on the map as the "Black River Track," and the northerly rail of track No. 4, which is the next track south, a distance of 12 feet, there was absolutely nothing to obstruct the vision, except a single telegraph pole; and that the engine, with the caboose attached, could have been seen by any one looking for it, and was actually seen by the only witness of the accident, who was standing at least 30 feet from the point of collision. This witness (Creighton) testified that, although the morning was muggy and misty, it was breaking daylight; that he could see the engine and caboose, and that the tender of the engine was backing east; that he saw the plaintiff's intestate struck, and discovered that it was a man; and that he saw the engine so distinctly as to be able to form a judgment as to the rate of speed at which it was running. If, then, this witness observed all that he describes, at a distance of 30 feet, how can it, with any propriety, be said that the deceased, with unimpaired eyesight, could not have seen the engine the moment he stepped beyond the track upon which the freight train was receding? It does not seem to me a sufficient answer to this proposition to say that, possibly, Creighton was mistaken when he testified that daylight was breaking, and that he had no difficulty in seeing the engine. He, as has been stated, was the only witness of the accident, and without his testimony as to what he saw there would be absolutely nothing in the case upon which the plaintiff could rest her right to recover (Reynolds v. Railroad Co., 58 N. Y. 248), and it would be establishing an entirely new rule of evidence if we were to hold that his declaration that he saw Pruey struck by one of the defendant's locomotives was sufficient to establish negligence upon the part of the defendant, but that it might be disregarded or explained away, in so far as it tended to disprove a state of facts inconsistent with the exercise of care upon the part of the deceased. If it be said that this freight train may, to some extent, have prevented the deceased from hearing or seeing another train approaching upon the next track, the obvious answer is that he, being familiar with the crossing, and knowing that trains were liable to be encountered at any time upon one or more of the tracks, was bound to wait until the freight train had proceeded a sufficient distance to the west to enable him to discover whether another train was approaching upon either of the adjacent tracks. Daniels v. Transit Co., 125 N. Y. 407, 26 N. E. 466; Purdy v. Railroad Co., 87 Hun, 97, 33 N. Y. Supp. 952.

The remaining proposition has, as I think, no firmer foundation upon which to rest than the one already considered. The rule that a person who seeks to recover damages by reason of the negligent act of another must show affirmatively his own freedom from concurring negligence has unquestionably been somewhat relaxed of late years. The courts still require that proof to be furnished, it is true; but it is now held that, in actions for negligence causing death, the absence of contributory negligence may be established sufficiently to make it a question of fact for the jury by proof of such facts and surround-

ing circumstances as reasonably indicate that the accident might have occurred without negligence upon the part of the deceased. Tucker v. Railroad Co., 124 N. Y. 308, 26 N. E. 916; Tolman v. Railroad Co., 98 N. Y. 198; Waldele v. Railroad Co., 4 App. Div. 549, 38 N. Y. Supp. 1009; Noble v. Railroad Co., 20 App. Div. 40, 46 N. Y. Supp. 645. But the facts and circumstances which will warrant such an inference must fairly and reasonably tend to establish the existence of some cause or occasion for the accident which is consistent with the exercise of proper prudence and care upon the part of the deceased, otherwise "the inference of negligence is the only one left to be drawn, and the burden resting upon the plaintiff is not successfully borne, and a nonsuit for that reason becomes inevitable." Tolman v. Railroad Co., supra.

In the present case the facts relied upon to bring it within the rule which the plaintiff's counsel invokes are the darkness of the morning, the moist condition of the atmosphere, the approach of the engine upon a wet track, without any light upon its tender, and without giving the customary signals, the presence of a strong east wind, and the rumble of the freight train as it passed to the west on track No. 1. These are all circumstances which would be entitled to due consideration upon the question of whether or not the plaintiff's intestate saw or heard, or ought to have seen or heard, the train, had he looked and listened for it; but just how either or all of them tend to establish the fact that he did look or listen, or that he took any other precaution whatever for his own preservation, does not satisfactorily appear; and, unless the rule contended for is to be so far extended as to permit juries to base verdicts upon the merest conjecture, I do not see how the plaintiff can avail herself of it. It will not do to say that Pruey probably exercised some degree of care, in his attempt to cross the defendant's tracks, simply because that is what he ought to have done; for, as has been well said in a recent case, "verdicts must stand upon evidence, and not upon mere conjecture, however plausible, and, if the situation be such that the plaintiff cannot furnish the requisite evidence, the misfortune is his." Babcock v. Railroad Co., 140 N. Y. 308, 311, 35 N. E. 597. I have read the record in this case with great care, but without finding any evidence therein which, by a fair and reasonable construction, can be regarded as satisfying the burden which rested upon the plaintiff of establishing the absence of contributory negligence upon the part of her intestate. On the contrary, it seems to me that the circumstances relied upon by her, so far from furnishing an adequate cause for the accident, and one which is consistent with the exercise of a proper degree of care upon the part of her husband, actually point in the opposite direction. In saying this, I am not unmindful of the former decision of this court in the case of Waldele v. Railroad Co., supra, nor of the decision of the Second department in the Noble Case, supra, in each of which the rule was extended to a point beyond which I do not believe we ought to go, unless, as has already been suggested, we are prepared to say that in actions of negligence, where death ensues, no evidence whatever of any care upon the part of the deceased shall be required. It seldom happens that the facts of any two negligence cases are alike; but this case,

in many of its features, is quite similar to the Daniels Case, supra, in which it was said, referring to the circumstances relied upon to establish the exercise of a proper degree of care upon the part of the plaintiff's intestate, that:

"The circumstances seem to point, not to an absence of negligence on his part, but rather to its existence. He was familiar with the crossing. He knew that there were two railroad tracks upon which trains passed in opposite directions. The passage of the train on the down-track obstructed his vision in the direction from which the other train came until it had passed the crossing and proceeded some distance beyond. The deceased apparently must have proceeded to cross the track immediately after the down-train passed the crossing, without looking up the road, because if he had looked after crossing the south track, before stepping on the north track, it is upon the evidence indisputable that he could have seen the approaching train. It is impossible to escape the conclusion, on the evidence, that the accident happened in consequence of his thoughtlessness."

I am persuaded that the circumstances of this case lead irresistibly to the conclusion that the plaintiff's intestate, after waiting north of the Black River track until the freight train moving west had passed beyond the point where he was standing, started for his place of business, in doing which he attempted to cross the intervening tracks diagonally, and ran heedlessly into the engine which struck him. Familiarity had doubtless bred within him contempt for whatever danger he was liable to encounter at this crossing; and believing, as I do, that it was to this fact, as well as to the defendant's negligence, that the unfortunate accident which caused his death was due, I am constrained to dissent from the prevailing opinions in the case.