CHARLES McSORLEY, as Administrator, etc., of JAMES McSORLEY, Deceased, Appellant, *v.* THE NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY, Respondent.

*Negligence — what may be shown as to the defendant's negligence and as to the intestate's contributory negligence in the case of a collision at a railroad crossing of which there are no eye-witnesses.*

In an action to recover damages resulting from the death of the plaintiff's intestate, who was killed in a collision between the delivery wagon which he was driving and one of the defendant's trains at a highway crossing, there being no eye-witnesses of the accident, evidence as to the character of the highway and the safeguards, if any, provided to avert accidents, is competent as bearing upon the degree of care which the defendant should have exercised, and thus upon the question of the defendant's negligence. Upon the question of the contributory negligence of the intestate it is competent to show, in addition to the difficulty of perceiving danger, the circumstances attending the happening of the accident and everything relating to the highway as a thoroughfare, the extent of travel upon it, and whether many persons were obliged

to pass over the crossing at all times of the day, from all of which the inference might be drawn that the intestate would not reasonably anticipate that a train would approach without warning at a high rate of speed.

Upon the trial of the action evidence was given tending to show that the intestate was driving westerly along the highway and that the train which struck the wagon approached the crossing from the north at a high rate of speed without giving any signal of its approach; that there was no flagman or gate at the crossing and that the intestate's view in the direction from which the train came was obstructed by a freight house which stood close beside the railroad tracks and by trees which grew along the tracks and along the side of the highway and extended to within twenty-five feet of the middle of the tracks, and that the highway made a sharp descent as it approached the railroad. There were no eye-witnesses of the accident and it appeared that the intestate was familiar with the highway and that the horse which he was driving was not injured.

*Semble,* that the evidence was sufficient to require the question of the defendant's negligence and of the intestate's contributory negligence to be submitted to the jury.

Appeal by the plaintiff, Charles McSorley, as administrator, etc., of James McSorley, deceased, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of New York on the 5th day of July, 1900, upon the dismissal of the complaint by direction of the court after a trial at the New York Trial Term.

The action was brought to recover for injuries which resulted in the death of plaintiff's intestate, James McSorley, who was struck by defendant's south-bound passenger train on the afternoon of May 20, 1898, while driving a delivery wagon westerly along the highway and across the railroad tracks at Teaneck, N. J.

At the trial the plaintiff, who was the father of James McSorley, testified that the latter for seven years prior to his death had been employed by the firm of Lord & Taylor, first as a wagon boy and then as a driver and at the time of the accident was following a regular route through Teaneck. This was corroborated by the manager of Lord & Taylor, who testified that the deceased " had been on this route where he was killed since 1895, about three years; he went over that route every day except Sunday ; " and, further, that he was of good health and habits — " a very reliable young man, attentive and alert in his business." From the testimony of a co-employee who had frequently been with the plaintiff's intestate in the

delivery wagon, it appears that the route led west from Englewood through Teaneck to Hackensack over "the main road between those two places," both of which were large towns. As to the configuration of the ground and the conditions at the place of the accident, the witness testified that going westerly along the highway it was down grade approaching the track for a long distance so that it was necessary to use a brake, but at the track and to the west of it the ground was level; that the tracks ran north and south and the road east and west, and on the north side of the road approaching the tracks from the east there was a growth of trees and also a growth of trees northward along the railroad; that any person not acquainted there would have to get pretty near the tracks to see them or to see a train approaching; that the day of the accident he "went after the horse," but the wagon was all smashed up.

Neither this witness nor others were allowed to testify how much travel there was upon this highway, and though he testified that it was a regular dirt road, others were not allowed to state whether or not it was macadamized. Testimony was also excluded as to whether there were street lamps, whether there was a flagman; what was the condition of the wagon after the accident; where the plaintiff's intestate was lying; and exceptions were duly taken by the plaintiff.

Another employee of Lord & Taylor who had traveled several times a week over the road and who lived at Hackensack, N. J., testified that at the time of the accident the growth of trees on the north side of the highway extended to within twenty-five feet of the easterly rail of the middle track, there being in all three tracks at the crossing, the westerly or south-bound track, the middle, northbound, track and the easterly, which was a switch track; that for the whole of a quarter of a mile going down towards the crossing one could not see the track north of the crossing; about 150 feet north of the crossing there was a freight house very close to the track and the station was about a quarter of a mile north of the highway; that at only one point about 300 feet from the crossing could the station be seen from the highway; that there was no gate at the crossing; that just above the depot to the north the track made a turn, but it was possibly straight for a quarter of a mile. An inhabitant of Teaneck also testified that the first tree north of

the highway and east of the track was twenty or thirty feet away from the easterly up rail, and another witness who lived in Teaneck testified that the trees referred to extended back five hundred feet from the highway; that the latter had to his knowledge been open for travel for thirty years and "from this point to Hackensack this is the principal road, the only way."

Testimony was given by passengers of the train to the effect that no bell was rung nor any whistle blown until the moment of the accident. Some testify that they did not hear any such, but others assert that they are positive that there was none. One passenger testified that the train when he boarded it at Newburgh, forty miles from Teaneck, was fifteen minutes late, which he ascertained by comparing the time table with his watch. He stated that he had considerable experience in traveling, but was not allowed to say whether or not the train at the time of the accident was going faster than the ordinary rate. The plaintiff's intestate, he said, was picked up from "between the two tracks" and put in the baggage car. It was further testified that the day was bright and clear and the accident happened early in the afternoon. Another passenger stated by deposition that from one side of the train he saw the injured man and the wagon and from the other "saw a farmer leading a white horse down * * * and he seemed to be in good condition."

There was put in evidence the New Jersey statute providing for the recovery of damages in cases where the death of a person is caused by wrongful act, neglect or default and also the statute providing that a railroad company shall cause a bell to be rung or a steam whistle to be blown at least 300 yards from the place where such railroad crosses a turnpike road or highway upon the same level and that such bell shall be kept ringing or such whistle shall continue to be blown until the engine has crossed the highway.

At the close of the plaintiff's case a motion was made to dismiss the complaint, which was granted, the court holding that "there is not enough to send the case to the jury." From the judgment thereupon entered the plaintiff appeals.

*Alfred B. Cruikshank*, for the appellant.

*Herbert E. Kinney*, for the respondent.

O'BRIEN, J. :

From the evidence which we have before us, and which was admitted on the trial, it is evident that the questions of the defendant's negligence and of the contributory negligence of the plaintiff's intestate were very close, and it is by no means certain that they should be determined against the plaintiff. Thus, it would appear that, in the face of the New Jersey statute, the defendant's train, which had been behind time at Newburgh, was speeding southward and over this grade crossing without any signal of its approach by whistle or bell, and without a flagman or gate having been provided; that though the road was straight for the distance of about a quarter of a mile north of the crossing, the view in this direction was obstructed by a freight house close beside the tracks and a growth of trees along the tracks and along the north side of the turnpike, the trees extending to within twenty-five feet of the middle of the roadbed, and that the highway was precipitous approaching the railroad, though level at the crossing.

Upon these facts there was sufficient to justify the inference that the defendant was negligent in not sounding a warning or having a flagman or gate at the crossing to apprise travelers of the approaching train; and we cannot conclude, as matter of law, that there was no proof that the deceased was free from negligence which contributed to the accident. Upon this latter question it might very well be that the plaintiff's intestate, who was described as a man "attentive and alert" in character, arrived at the tracks without any intimation of danger, and, suddenly discovering the train close upon him, was unable with reasonable care to avoid the collision. Suddenly confronted by a rapidly approaching train he was compelled in the management of his horse to act hurriedly, and, under such circumstances, a mistake of judgment is never conclusive proof of negligence. It is true that the testimony is scant, there being no eye-witness, but from the position of the wagon and the horse after the accident it is fair to infer that he had, when struck by the train, almost reached a place of safety. This much we are able to conclude from the testimony before us, and though some evidence bearing upon the questions of negligence was thus admitted, what the appellant justly complains of is that all the evidence offered upon these matters was not allowed. Thus, while inquiries directed

to some witnesses as to the character of the highway, the precautions taken to warn travelers, the position of the wagon and of the injured man at the time of the accident, were admitted, similar evidence which was intended to amplify and more fully explain these same incidents was excluded. .

The principle which is here applicable is thus referred to in *Pruey* v. *N. Y. C. & H. R. R. R. Co.* (41 App. Div. 158): "In a case where death ensues as a result of a collision of this kind, and where there is no eye-witness of the occurrence, there is a relaxation of the rule requiring strict proof that the decedent was vigilant and observant as he advanced toward the track. The regulation exists in its integrity, but the proofs presented may be inferential, may be dependent upon circumstances, and still be adequate to satisfy the court of the absence of contributory negligence. As was said in *Noble* v. *The New York Central & Hudson River Railroad Co.* (20 App. Div. 42): 'In actions to recover damages for negligence resulting in death where there are no eye-witnesses of the accident, the freedom of the deceased from contributory negligence may be established by proof of facts and circumstances from which it may fairly be inferred that the deceased was not at fault.'" Thus in *Wieland* v. *Delaware & Hudson Canal Co.* (30 App. Div. 85), where an accident similar to this occurred and where as here, the horse escaped injury, a recovery was allowed.

Whether the circumstances and conditions shown by the evidence admitted to exist were such as would warrant a recovery here, however, it is unnecessary for us to determine, for the reason that we think error was committed in the exclusion of considerable evidence tending to show the exact situation at the place and at the time of the accident. Were such evidence admitted the plaintiff might have been able to make out a *prima facie* case. Thus, upon the question of defendant's negligence, it was proper as bearing upon the degree of care which the defendant should exercise, to show the general character of the highway, the safeguards, if any, provided to avert accidents; and upon the question of contributory negligence it was competent to show, in addition to the difficulty of perceiving danger, all the circumstances which would bear upon the manner in which the accident happened, and everything relating to the highway as a thoroughfare, the extent of travel upon it, and

whether at that point many persons were obliged at all times of the day to cross, from all of which the inference might be drawn that the intestate would not reasonably anticipate that a train would approach without warning at a high rate of speed. In the case of *Judson* v. *Central Vermont R. R. Co.* (158 N. Y. 597), wherein it was held (head note) that "a person approaching a railroad crossing is not bound to exercise the greatest diligence, but only such as a prudent man approaching such a place would ordinarily exercise under the circumstances," the rule was pointed out that what a person desiring to cross a railroad track must do in a given case to relieve himself from the charge of negligence is for the jury to decide, in view of the circumstances developed.

Aside from these questions of negligence, our attention is called by the appellant to the exclusion of evidence bearing upon the allegation of the complaint that the defendant inhumanly treated the injured man after the accident, by conveying him in its baggage car without medical attendance from Teaneck to Weehawken, where he died. This objection is met on the part of the defendant by showing that, although the complaint contained the allegation referred to, it was also alleged therein that the death of the plaintiff's intestate was *caused* by the collision itself. Further, the defendant avers that, for such personal injuries, if any, recovery was impossible after death. In regard to these questions we think that no comment is necessary, in view of the conclusion at which we have arrived, that error was committed in excluding evidence offered upon the defendant's negligence and the freedom of the deceased from contributory negligence.

We think, therefore, that the judgment should be reversed for the reasons stated and a new trial ordered, with costs to the appellant to abide the event.

Van Brunt, P. J., Rumsey and McLaughlin, JJ., concurred.

Judgment reversed, new trial ordered, costs to appellant to abide event.