(156 App. Div. 394.)

### HATCH v. LAKE SHORE & M. S. RY. CO.

(Supreme Court, Appellate Division, Fourth Department.    April 30, 1913.)

1. RAILROADS (§ 326*)—INJURIES TO PERSONS ON TRACKS—CONTRIBUTORY NEGLIGENCE.

One who attempts to pass a railroad crossing when the gates are closed is guilty of contributory negligence as a matter of law, and there can be no recovery, though he was not struck by the train which was passing at the time he entered the right of way, but was struck by another train operated at a rapid rate of speed and without a headlight.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1037–1042; Dec. Dig. § 326.*]

2. APPEAL AND ERROR (§ 274*)—PRESENTATION OF GROUNDS OF REVIEW IN COURT BELOW—EXCEPTIONS—SUFFICIENCY.

In an action against a railroad, where it appeared that deceased entered on the right of way after the gates were closed for the passing of a freight train, and was killed by a passenger train, an exception to the refusal to charge that, if deceased walked under the gates when down,

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date; & Rep'r Indexes

verdict should be for defendant, sufficiently presents for review on appeal the question whether defendant was guilty of contributory negligence as a matter of law; it being immaterial whether deceased went under the gates, or jumped over them, the point of the instruction being that he went upon the tracks after the warning that it was unsafe.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1591, 1592, 1605, 1606, 1607, 1624, 1631–1645; Dec. Dig. § 274.*]

McLennan, P. J., dissenting.

Appeal from Trial Term, Chautauqua County.

Action by Cora May Hatch, as administratrix of the estate of Elmer H. Hatch, deceased, against the Lake Shore & Michigan Southern Railway Company. From a judgment for plaintiff, and an order denying its motion for new trial, defendant appeals. Reversed and remanded.

Argued before McLENNAN, P. J., and KRUSE, ROBSON, FOOTE, and LAMBERT, JJ.

Thomas D. Powell, of Buffalo, for appellant.
Nelson J. Palmer, of Dunkirk, for respondent.

KRUSE, J. The plaintiff's intestate was struck by the Twentieth Century Limited at a street crossing in the city of Dunkirk, and was killed. The collision occurred at night. The train was going at the rate of 50 to 70 miles an hour. It approached the crossing with headlight out or dim and whistle and bell silent, so the jury could find from the evidence. But there was also evidence tending to show that the man who thus lost his life went upon the tracks after the gates were lowered. The evidence tends to show that after the gates went down a freight train from the west passed over the crossing; at the same time the west-bound Twentieth Century Limited was approaching from the east; that the decedent went upon the tracks while the freight train was passing, or after it had passed, and while the gates were down, and before the Twentieth Century Limited had reached the crossing. Evidently the man was looking out for the freight train, and was unaware of the approaching passenger train, which struck him.

[1] While I think the evidence justifies the finding that the engineer of the colliding train was negligent in running his train as he did, and that if the defendant is liable at all the verdict is not excessive, I am not persuaded that the defendant is liable if the man went upon the tracks while the gates were down. I am not aware that the precise question has ever been decided by the appellate courts of this state. The rule as laid down in the Cyclopedia of Law and Procedure (33 Cyc. 999) is as follows:

"Where the gates across a highway at a railroad crossing are closed, a person attempting to cross generally has sufficient warning that the crossing is for the time being to be used for the passage of trains; and if he is injured in such attempt he is ordinarily guilty of contributory negligence barring a recovery, unless the circumstances at the particular time and crossing are such that the fact that the gates are closed is not a warning of danger."

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

That rule is supported by decisions of the highest courts of Massachusetts and Pennsylvania, and other decisions there cited. I shall call attention to but two of the decisions. In the case of Cleary v. Philadelphia & Reading R. R. Co., 140 Pa. 19, 21 Atl. 243, it appeared that with the gates down a person started to cross the railroad tracks, and while he was looking at one train he was struck by another, and it was held that the railroad company was not liable. The rule is the same in Massachusetts. Granger v. Boston & Albany R. R. Co., 146 Mass. 276, 15 N. E. 619. In that case the court said:

"In these cases each plaintiff's intestate was warned by the lowered gates that it was unsafe for him to cross the track. It was his duty to wait till the gates were raised. He voluntarily entered upon the track, notwithstanding the warning and without any excuse. This was negligence on his part which caused the accident, and the consequences of his rashness cannot be cast upon the defendant. It is not an answer to say that he may have supposed that the gates were down because the freight train was passing, and he was willing to take the risk of getting safely by that. He had no right so to suppose. It was negligence for him to enter upon the track when he was warned that the railroad required the exclusive use of the crossing for its proper business."

The rule of those cases commends itself to my judgment, and I think applies to this case. A person who consciously goes upon railroad tracks at a street crossing, knowing that the gates are closed, takes chances which I think a reasonably careful and prudent person does not ordinarily take. He does so at his peril, and I think is guilty of negligence as a matter of law, unless there are special circumstances to justify him in so doing, and which I think are absent in this case.

The case of Pruey v. N. Y. C. & H. R. R. R. Co., 41 App. Div. 158, 58 N. Y. Supp. 797, I think, is not in conflict with this view. It there appeared that the gates were usually down at the time of day when the person there went upon the tracks and the accident occurred, so that the closed gates would not necessarily indicate that a train was approaching. The complaint here seems to have been framed upon that theory. It alleges that the defendant permitted the gates to be lowered and remain lowered for long periods of time between certain hours in the night (which included the point of time when this accident occurred), which fact was well known to the decedent and to the public generally. The purpose of that allegation, I assume, was to show that the closed gates did not necessarily mean that a train was approaching. But that claim seems to have been abandoned upon the trial.

[2] It is contended on behalf of the plaintiff that this question was not sufficiently raised. Among other requests the court refused to charge the jury that, if the intestate walked under the gates when down, its verdict should be for the defendant. It is urged that there is no evidence that the decedent walked under the gates when they were down. I think there is evidence which clearly shows that the deceased saw the gates lowered, and that he went onto the tracks without heeding the warning of the closed gates. It is a matter of

141 N.Y.S.—67

no importance whether he went under the gate, around it, or jumped over it. The point is that he went upon the tracks, having warning that it was unsafe for him to do so, and that question, I think was raised by the exceptions to the refusals to charge and instructions actually given upon that point.

The judgment and order should be reversed, and a new trial ordered, with costs to the appellant to abide the event.

Judgment and order reversed, and new trial granted, with costs to appellant to abide event. All concur, except

McLENNAN, P. J. (dissenting). I dissent from the decision about to be made in this case, reversing a judgment recovered by the plaintiff for $7,500 damages, besides costs. I think the evidence clearly presented questions of fact for the jury as to the negligence of the defendant and the contributory negligence of the deceased. The case was submitted to the jury upon a charge which amply protected defendant's rights upon all the questions of law and fact involved, and the trial court properly refused to interfere with the verdict rendered by the jury, by denying the defendant's motion for a new trial.

The plaintiff's intestate was struck and instantly killed at about 1:30 o'clock in the morning on the 7th day of April, 1912, at the Lion street crossing in the city of Dunkirk by one of defendant's trains, known as the Twentieth Century Limited, proceeding west. Lion street extends practically north and south, and is crossed at the point in question by five railroad tracks extending east and west along Third street practically at right angles to Lion street. Passing along Lion street from the north to the south, the first track to cross is a siding of the defendant, the second a siding of the Erie Railroad, the third the defendant's west-bound track, the fourth the defendant's east-bound track, and the fifth a track of the Erie Railroad. Shortly before the accident the deceased, in company of one Nelson, proceeded west on Third street to Lion street, turned down Lion street, going south, went upon the crossing, remaining on the crossing a few minutes while a freight train was passing on defendant's east-bound track, had reached the west-bound track just as the last car and caboose of the freight train were about to clear the crossing, and was there struck and killed.

There is a conflict in the evidence as to whether or not the deceased and Nelson went upon the crossing before the gates which were maintained at the crossing were lowered. The gateman, who operated the gates from a tower, testifies that when he lowered the gates he saw no one inside them. Other witnesses testified that they looked after the gates went down and saw no one on the crossing, upon any of the tracks. The jury might, therefore, have found that the deceased went upon the crossing after the gates were lowered. The testimony of Nelson, however, is that he and the deceased had proceeded beyond the gates while the gates were still up; that Nelson then saw a freight approaching the crossing from the west, about two car lengths west of the crossing; that then the gates went down behind them; that they waited until the freight had nearly passed, when they walked slowly across the tracks; that they both looked in each direction as they proceeded; that they saw nothing and heard nothing of the ap-

proaching passenger train, until it came up all of a sudden and without warning out of the darkness and hurled them both from the track.

It was conceded that the Twentieth Century Limited sounded no whistle except as it approached the city line, which was too far away to be of any use as a warning at the Lion street crossing. The evidence presented by the plaintiff was to the effect that the headlight was either out, or, if burning at all, was so dim as to be easily mistaken for a switch light in the yards through which the train was passing. There were shown to have been 15 different lights, scattered along on both sides of the west-bound track, at distances from 640 to 2,300 feet east of the Lion street crossing, all in the yard through which the train came. The speed of the Twentieth Century train was variously estimated by the different witnesses; but the evidence was such as to warrant the jury in finding that it was running at from 50 to 60 miles per hour as it passed the Lion street crossing. It appeared from the evidence of defendant's witnesses that this train was capable of running at least 70 miles per hour, that its schedule called for an average speed of 60 miles per hour between Buffalo and Cleveland, and that on the morning in question it was running about 15 minutes late. The witnesses called by the plaintiff testified that they were in a position to hear as the train went by, but did not hear any bell ringing upon it. Defendant's engineer testified that the automatic bell ringer was operating continuously from the time he left Buffalo until he reached Cleveland. The evidence showed that the noise of the passing freight train was such, however, as would probably have drowned the noise of the bell on the approaching passenger train, if it was ringing. It appeared that the tracks of the defendant to the east are straight for about 1,150 feet, when they commence to curve slightly, and pass out of sight behind a tower about 1,700 feet distant, and to a person standing on the west-bound track of defendant at this crossing the west-bound track is not again in view until a point 2,350 feet east of the crossing is reached. ·

It is the claim of the defendant that there was no evidence which warranted the submission to the jury of the question of defendant's negligence, and that in any event the finding of the jury upon this question is contrary to and against the weight of the evidence. As before stated, I think the trial court was right in holding that the question was one of fact for the jury, and that their verdict is amply supported by the evidence. Defendant's counsel requested the court to charge "that, if they find the intestate walked under the gates when down, their verdict must be a verdict of no cause of action," which the court refused to charge, and defendant duly excepted. I am of the opinion that this was not error. The request was not in form to indicate to the court whether it was defendant's contention that the lowering of the gates was all the duty the defendant owed to the deceased; and that therefore the defendant could not be held negligent if it gave warning in this manner alone, or whether the passing under the gates when down constituted contributory negligence on the part of the deceased as matter of law. In either view, however, we think the request was properly denied. The fact that the gates were lowered did not of itself establish freedom from neg-

ligence on the part of the defendant, especially so in view of the fact that this was one of the principal streets of the city of Dunkirk, a city having a population of over 17,000; the street on both sides being built up with substantial business blocks, as shown by the photographs introduced in evidence. Pruey v. N. Y. C. & H. R. R. R. Co., 41 App. Div. 158, 58 N. Y. Supp. 797, affirmed 166 N. Y. 616, 59 N. E. 1129; Noble v. N. Y. C. & H. R. R. R. Co., 20 App. Div. 40, 46 N. Y. Supp. 645, affirmed 161 N. Y. 620, 55 N. E. 1098; Dolan v. D. & H. Co., 71 N. Y. 285.

Defendant's counsel also asked the court to charge the jury that if they "find the deceased saw the gates go down, though he was south of them, it was nevertheless his duty to stop where he was and not proceed until the gates were raised," and the court refused to charge that as matter of law, but left it to the jury to determine on the facts, to which defendant excepted. We think this was not error. The request, if charged, would have led the jury to believe that the deceased, even if in a place of danger when the gates were lowered, was obliged as matter of law to remain at that spot and not use reasonable care to reach a place of safety. The court charged the jury at defendant's request, without objection on the part of the plaintiff, that "there is no evidence in this case upon which they can find the defendant negligent in the operation of the gates," and from this it is argued by defendant that it must be conceded as conclusively established that the gates were lowered before the deceased went upon the tracks; but, as we have already seen, this conclusion does not follow, for the evidence of Nelson was to the effect that when they went upon the crossing the freight train was still to the west of the crossing, so that the defendant may have been guilty of no negligence in the operation of the gates by lowering them after the deceased and Nelson went upon the crossing.

It is only in rare cases that the court is warranted in determining the questions of negligence and contributory negligence as questions of law. They are usually questions of fact, to be determined as such. Kellegher v. Forty-Second St. R. R., etc., Co., 171 N. Y. 309, 63 N. E. 1096. I am not unmindful of the fact that defendant's counsel has called to our attention several cases decided by the courts of Massachusetts, Illinois, Ohio, and other states, holding that, where a person goes past or under lowered warning gates at a railroad crossing, he is guilty of contributory negligence as matter of law, unless some special circumstances are shown to justify his action; but I do not think so strict a rule has been adopted by the courts of this state. See cases cited above.

Defendant's counsel also requested the court to charge that "the deceased had no right to assume that the gates were down for the freight train only." The court said, "I leave that to the jury as a question of fact under all the circumstances in the case," to which defendant excepted. The appellant calls to our attention several cases in other states holding that a refusal to charge a similar request was error; but here, also, we think the rule adopted by our courts is not so stringent, and in any event I think the request was not in proper form, for there is no direct evidence in the case that

the deceased saw the gates go down, or, if it could be found from inference that the deceased did have knowledge of that fact, that he relied solely upon any such assumption.  He might have assumed that the gates were down for the freight train only, and yet have exercised due care and diligence to discover whether any other trains were approaching the crossing.  We think that any traveler has the right to assume, if he wishes, that no trains are approaching whenever he intends to cross a railroad crossing, and yet absolve himself from the charge of contributory negligence by being watchful as the law requires.  It is only where the traveler makes such an assumption and attempts to cross, relying solely upon that assumption, without taking other precautions, that he could be said to be at fault. We therefore think the court properly denied the request to charge in the form in which it was made.

Defendant claims that the verdict is excessive.  The deceased was a man 37 years of age, in good health, earning from $700 to $800 per year.  He left no children, and his widow, the plaintiff, is entitled to the entire amount recovered in this action.  We think we ought not to interfere with the verdict on the ground that it is excessive.  The judgment and order appealed from should be affirmed, with costs.