gations fairly permitted and required is that the letters were issued in the same proceeding in which the will was admitted to probate.

These views lead to the conclusion that the interlocutory judgment should be affirmed, with leave to the defendant to answer on payment of costs. All concur.

(20 App. Div. 27.)

### PEOPLE ex rel. KAVANAGH v. GRADY et al.

(Supreme Court, Appellate Division, Second Department. July 13, 1897.)

APPEAL—REFUSAL OF MANDAMUS—PROCEDURE.

The provision of Code Civ. Proc. § 2068, that a writ of mandamus can be granted only at a special term of the court, applies only to an original application for the writ; and on an appeal from an order denying such an application the appellate division may make an order for the issue of the writ, which requires no action of the special term.

Application by the people, on the relation of Owen J. Kavanagh, for a writ of mandamus against John T. Grady and others, composing the board of police commissioners of Long Island City. Defendants committed for contempt.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and BRADLEY, JJ

William E. Smith, for applicant.

Thomas P. Burke, for respondents.

PER CURIAM. We are of opinion that the objection to the regularity of the writ of mandamus served on the respondents, in that it was issued on the order of this branch of the court instead of by the order of the special term, is not well founded. The provisions of section 2068 of the Code of Civil Procedure that a writ of mandamus can be granted only at a special term of the court apply only to an original application for the writ. That section does not limit the effect of section 1317 of the Code that on appeal the appellate division may reverse, affirm, or modify any order appealed to it. The authority for the issue of a writ in this case was the order of this division, made on an appeal from an order denying the application for the writ. The order of this branch of the court required no action by the special term to give it full vitality and effect.

Defendants should be convicted of contempt, and fined the sum of $10, and ordered to stand committed to the common jail of Queens county until they comply with the terms of the writ.

(20 App. Div. 40.)

### NOBLE v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Appellate Division, Second Department. July 13, 1897.)

ACCIDENT AT RAILROAD CROSSING—QUESTION FOR JURY.

One N. was struck and killed by a train on defendant's railroad. The accident was not seen, and was discovered by the finding of N.'s body, a short distance from a highway crossing, with a broken lantern from the engine under it, and by traces of blood on the engine. The night when the accident happened was very foggy and dark, the view of the tracks at

the crossing was partly obscured by a standing freight car, and a freight train had passed over the crossing in one direction just before the time when the express by which N. was killed reached it from the other. The express was running between 37 and 40 miles per hour. The gates at the crossing were closed, but were usually kept closed on foggy nights. *Held,* that evidence showing these facts was sufficient to authorize the submission to the jury, in an action to recover damages for N.'s death, of the questions both of negligence and contributory negligence, since the former might be inferred from the high speed of the train, under the existing conditions; and the facts and circumstances presented a choice between possible but diverging inferences as to the former, which was for the jury to make.

Appeal from trial term, Westchester county.

Action by Minnie Noble, as administratrix of Thomas Noble, deceased, against the New York Central & Hudson River Railroad Company. From a judgment in favor of plaintiff, rendered on the verdict of a jury, and from an order denying a motion for a new trial, defendant appeals. Affirmed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and BRADLEY, JJ.

Daniel W. Tears, for appellant.

Arthur J. Burns, for respondent.

WILLARD BARTLETT, J. On the evening of November 2, 1895, at about five minutes after 6 o'clock, in that part of the city of Yonkers where Ashburton avenue crosses the defendant's railway, the plaintiff's husband, Thomas Noble, was struck and killed by the locomotive of the defendant's train known as the "Chicago Limited," on its way from Albany to New York. No one saw the accident; but shortly after the train had passed southward Noble was found dead near the track, 56 or 57 feet south of the crossing, with his skull fractured, and his side completely crushed in. Near him lay a small lantern, called a marker, which was subsequently found to belong to the pilot beam of the locomotive of the Chicago Limited; and the door of this lantern was under Noble's left breast, within the lapel of his overcoat. Neither the engineer nor the fireman of the train was aware that any accident had occurred until they discovered that the marker was missing, and that there was blood upon the crossbeam of the locomotive, when they arrived at the Grand Central Station in New York. The administratrix has recovered a verdict of $10,000 against the railroad company for the negligent killing of her husband under these circumstances. We are asked to reverse the judgment entered on that verdict, and to grant a new trial, on four grounds: (1) Because the evidence did not justify a finding that the deceased was free from contributory negligence; (2) because it did not establish any negligence on the part of the defendant; (3) because the trial judge instructed the jury that negligence might be predicated of the speed of the train under the conditions existing at the time and place of the accident; and (4) because the damages are excessive.

As to the first point, I think there was sufficient evidence to take the question of contributory negligence to the jury. When last seen alive, the deceased was at work in his stable, which was west of the

railroad. His way home would take him over the track, and it is altogether probable that he undertook to cross at Ashburton avenue, and was there struck by the train, which was running at the rate of between 37 to 40 miles an hour, and would carry him in a single second to the place where his body was found. The gates maintained by the defendant at the crossing were down, but no negligence can be imputed to Noble from the fact that he attempted to cross while they were in this position, as it appeared that it was the custom to keep them down on foggy and stormy nights, except when they were raised to allow teams to pass. The night of the accident was dark, and very foggy. "As we passed through Ashburton avenue," says the engineer of the Chicago Limited, "you could not see the track at all ahead of you, hardly, on account of the fog and darkness." On a switch or side track north of the crossing stood a freight car or freight cars, in such a position with reference to the approaching train as to interfere with the view until a person was very close to the track. A northward-bound freight train had just passed the crossing on one of the tracks to the east, or must have been passing over it as Noble arrived there. His duty was to look and listen. But to look was of no avail if the car or cars on the siding obstructed his vision, as may well have been the case in the fog, without his perceiving that there was any such obstacle there, or what the nature of the obstacle was. And while there is evidence that the engine bell on the Chicago Limited was rung as it neared Ashburton avenue, the noise of the north-bound freight train could readily render its sound imperceptible to a listener situated as was the plaintiff's husband when he endeavored to cross the track. In actions to recover damages for negligence resulting in death, where there are no eyewitnesses of the accident, the freedom of the deceased from contributory negligence may be established by proof of facts and circumstances from which it may fairly be inferred that the deceased was not at fault. Johnson v. Railroad Co., 20 N. Y. 65; Hart v. Bridge Co., 80 N. Y. 622; Jones v. Railroad Co., 28 Hun, 364, affirmed 98 N. Y. 628; Tolman v. Railroad Co., 98 N. Y. 198. In the case last cited it is said that if the surrounding facts and circumstances reasonably indicate or tend to establish that the accident might have occurred without negligence on the part of the deceased, a question of fact may arise to be solved by a jury, requiring a choice between possible but diverging inferences. The case at bar seems clearly to fall within the class thus mentioned; and it is easy to find instances in the reports where recoveries have been sustained upon less cogent proof than is here presented as tending to establish the absence of contributory negligence.

We are also of the opinion that the case was properly submitted to the jury upon the question of the defendant's negligence. The learned trial judge did not say that negligence was to be inferred from the high speed of the train alone, but held that it might be predicated upon the speed in view of the existing conditions. This instruction is well supported by authority. Salter v. Railroad Co., 88 N. Y. 42, 50; Thompson v. Railroad Co., 110 N. Y. 636, 17 N. E. 690. It was most appropriate in the present case, when regard is had to the circum-

stances as they existed at Yonkers when this train came along and killed the plaintiff's husband; for the jury were authorized by the evidence to find that the railroad company, by allowing standing cars near the crossing to obstruct the view of approaching trains, had itself created a condition of things which demanded a decreased rate of speed at this point. The verdict was liberal, but not so large as to justify us in interfering with it as excessive.

The judgment should be affirmed, with costs. All concur.