Upon the trial of this action evidence was given tending to establish the following facts: Eleventh avenue and Forty-fifth street, in the city of New York, cross each other substantially at right angles. In the avenue as it crosses Forty-fifth street, and on an even grade therewith, are two railroad tracks belonging to the defendant, upon which engines are run propelled by steam On the 5th of April, 1895, at about half-past nine in the evening, on a clear night, the plaintiff's intestate, 32 years of age and in the full possession of his faculties so far as appears, started to walk across the avenue on the crosswalk extending from the southeast to the southwest corner of the two streets. It was 22.3 feet from the curbstone where he started to the first rail of the nearest track. He lived in the neighborhood and was familiar with the crossing.
At this time an engine, attached to a few freight cars, was either standing still at Forty-fourth street, as two witnesses stated, or was backing on the south track from Forty-fourth *Page 283 
street toward the crossing, and a passenger train was approaching on the north track going in the opposite direction. There was neither gate nor flagman at the crossing, and no whistle was sounded or bell rung, nor any kind of warning given of the approaching engine, except that a headlight on the end of the tender was lighted. The engine was moving so quietly that two observers who saw the headlight thought it was standing still. The deceased was walking along in the usual way, going straight across and whistling as he walked. As he started across he was seen to look both to the right and left and as he was half way between the curb and the nearest track he looked again in both directions. In an instant he reached the first rail, was struck and mortally injured. The engine was described by one witness as moving "fast," by another as moving "swift," and by the engineer as moving at from 4 to 4½ miles an hour. It stopped, as one witness testified, after the first trucks of the first car had passed over the decedent. It moved the length of a block while he walked 22 feet.
At the close of the evidence for the plaintiff the court dismissed his complaint and ordered his exceptions to be heard in the first instance by the Appellate Division, where they were overruled and the motion for a new trial was denied. From the judgment entered accordingly the plaintiff, after obtaining permission, appealed to this court.
There was a conflict in the evidence as to whether the bell on the engine which ran over the plaintiff's intestate was ringing or not. The accident was seen by two witnesses, one standing at the northeast corner of the crossing, who, after stating that he observed the train, testified that he heard no noise coming from the engine, and that he did not hear any bell rung; the other, who was walking between Forty-fifth and Forty-sixth streets, testified that he observed the train and that no bell was rung. On his cross-examination, after stating that he was positive that no bell was rung, the record discloses the following: "Q. How are you sure of that? A. I did not hear it? Q. That is all you mean to say, you did not hear it? A. I did not hear it. Q. That is what you mean to say when *Page 284 
you say it was not rung? A. It was not rung. Q. I say when you say it was not rung, you mean to say you did not hear it rung; isn't that so? A. If I can't hear it it can't be rung. Q. When you say the bell was not rung, you mean to say you did not hear it? A. That I did not hear it. Q. That is all you mean to swear? A. It was not rung." The engineer, who was called by the plaintiff, testified that the bell was ringing when the accident happened, but he did not state how long it had been ringing.
A witness, shown to have been in a position to hear, who testifies that he observed the engine but did not hear the bell ring, furnishes some evidence that the bell was not ringing, and if he is positive that the bell was not rung, he furnishes strong evidence that the bell was not ringing. The evidence of the witness in this case, who was positive upon the subject, was not materially affected by his cross-examination, for while he said he did not hear the bell, when asked if that was all he meant, twice answered that it was not rung. The answers were not inconsistent. We assume, therefore, that the jury might properly have found that the bell was not rung.
A railroad company which runs a locomotive, rapidly, in the night time, upon a public street in a populous city, crossing other streets at grade, with no gate or flagman to protect the public and without taking any precaution to warn travelers by bell, whistle or otherwise, except by means of its headlight, may properly be found guilty of neglecting its duty to operate its cars with the care and caution required by the circumstances. (Dyer v. Erie Ry. Co., 71 N.Y. 228; Houghkirk v. Delaware Hudson Canal Co., 92 N.Y. 219; Thompson v. N.Y.C. H.R.R.R. Co., 110 N.Y. 636; Vandewater v. N.Y. N.E.R.R.Co., 135 N.Y. 583, 588.)
Whether the decedent was conclusively shown to have been guilty of contributory negligence depends upon what occurred in an instant of time. He looked in both directions when he started to cross, and when he was half way to the nearest rail he looked in both directions again. Therefore, in order to *Page 285 
justify the action of the courts below, it must be held, as matter of law, that it was his duty to look again while passing over the remaining space of 11 feet, or that in looking he was negligent in failing to observe the approaching freight train. The jury had the right to find that the engine, through its quiet movement, made the same impression upon him that it did upon the only two observers who were called as witnesses, both of whom testified that they thought it was standing still, and that before they realized it the train was upon him. If there is any reasonable evidence of care on the part of the plaintiff in an action to recover damages on account of negligence, it is for the consideration of the jury. There was some evidence of care on the part of the deceased, because he looked in both directions when he started across the avenue, as well as when he was half way to the nearest track. There was no direct evidence that he listened, and there never can be when the subject of the accident is dead. (Schafer v. Mayor, etc., of N.Y., 154 N.Y. 466, 472.) It appears, however, that he was on the alert and using his eyes, which is some evidence, under the circumstances, that he was also using his ears. Moreover, the jury could have found that if he had listened he would not have heard the train, for there was no noise and no warning. (Smedis v. Brooklyn R.B.R.R. Co.,88 N.Y. 13.) They could also have found that if he saw the approaching engine, he thought it was standing still, as the other witnesses did. It is difficult to tell, in the night time, when the track is level and straight, whether the headlight on an engine is approaching, standing still or receding. As one of the witnesses put it, "at the rate of speed the train was running, when you see the headlight a block away you cannot possibly tell whether it is there or coming on." The passenger train on the north track, according to some of the evidence, did not reach the crossing until after the accident, and this would tend somewhat to divert the attention of a traveler upon the crosswalk. Under these circumstances, we think, it was for the jury and not for the court to decide whether the deceased was guilty of contributory negligence. (Kettle v. Turl, 162 N.Y. 255;Zwack v. N.Y., L.E. W. *Page 286 R.R. Co., 160 N.Y. 362; Judson v. Central Vermont R.R. Co.,158 N.Y. 597; McNamara v. N.Y.C. H.R.R.R. Co., 136 N.Y. 650;Rodrian v. N.Y., N.H. H.R.R. Co., 125 N.Y. 526;McClain v. Brooklyn City R.R. Co., 116 N.Y. 459; Greany v.Long Island R.R. Co., 101 N.Y. 419; Massoth v. Del. Hud.Canal Co., 64 N.Y. 524; Noble v. N.Y.C. H.R.R.R. Co.,20 App. Div. 40; S.C., 161 N.Y. 620, 630.)
For these reasons we think the judgment should be reversed and a new trial granted, with costs to abide the event.
PARKER, Ch. J., BARTLETT, MARTIN, CULLEN and WERNER, JJ., concur; GRAY, J., not sitting.
Judgment reversed, etc.