forming to the requirements of section 575 of the Code of Civil Procedure. That section of the Code must be read in connection with the preceding sections, which refer to discharging, upon bail or deposit, a defendant who is under arrest. Section 573 provides:

"That the defendant at any time before he is in contempt * * * must be discharged from arrest either upon giving bail, or upon depositing the sum specified in the order of arrest. * * * "

Section 575 provides that:

"The defendant may give bail by delivering to the sheriff a written undertaking, in the sum specified in the order of arrest, executed by two or more sufficient bail, stating their places of residence and occupations, to the following effect: * * * Subd. 2. If the action is to recover a chattel, that the defendant will deliver it to the plaintiff, if delivery thereof is adjudged in the action, and will pay any sum recovered against him in the action."

The section cited relates to a discharge of the defendant from the custody of the sheriff. It refers to his being fully set at large and delivered from the process upon his giving adequate and satisfactory security for any judgment that may be recovered against him, either as to the specific delivery of a chattel, or the payment of a sum of money. A person giving an undertaking for the jail liberties is not discharged from arrest, nor generally set at large. As said in Peters v. Henry, 6 Johns. 123, prisoners in execution are within the prison while on the limits; and in Dole v. Moulton, 2 Johns. Cas. 205: "In all cases, therefore, where the security is offered, the four walls of the prison, according to the ancient law, are enlarged to the extent of the limits assigned by statute. * * * So that the limits are to be considered, in such case, as the prison;" and in Develin v. Cooper, 84 N. Y. 410: "Being out of jail on the liberties is, in the judgment of the law, being in prison." If these statements are correct, then, in judgment of law, it cannot be said that this defendant has been discharged. Unless section 575 of the Code of Civil Procedure is to be construed as depriving a defendant under arrest, in an action to recover a chattel, of the benefit of section 149, Id., there is no conflict between those sections. This defendant has not been held to bail so as to effect his discharge. He is still a prisoner. The defendant was entitled to the liberties of the jail, and the undertaking given for the purpose of securing his right was sufficient in form.

The order should be affirmed, with $10 costs and disbursements. All concur.

---

MITCHELL v. THIRD AVE. R. CO.

(Supreme Court, Appellate Division, First Department. June 21, 1901.)

1. STREET RAILROADS—INJURY AT CROSSING—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.
    Plaintiff testified that he was walking alone about 1:30 a. m., and while passing over the cross walk of an avenue he was struck by a street car; that he looked up and down the avenue before stepping from the curb, and again just as he stepped on the parallel double track; that he saw no headlight or other indication of an approaching car until it

struck him, though his eyesight was "pretty fair"; and that he heard no gong or bell. There was no obstruction to his view up the avenue, and, though the night was dark, the street was lighted by gas, and there was an arc electric light at the corner. A passenger who was looking out of the front window testified that the motorman did not ring the bell, and that the headlight must have been very dim; that the car was going very fast, and ran at least a block before stopping; that he first saw plaintiff on the track when the car was 10 or 12 feet from him; and that a person could not see any distance. *Held*, that the question of plaintiff's contributory negligence was for the jury.

2. SAME—DIRECTION OF VERDICT.
In any case where the right to trial by jury exists, whenever the plaintiff raises a question of fact which would justify a finding in his favor such issue must be determined by the jury, and not by the court on motion to direct a verdict; and, if the verdict is against the weight of evidence, it may be set aside, but a new trial must still be granted before another jury.

3. SAME—LOOK AND LISTEN RULE.
While courts have taken judicial notice of the fact that ordinarily careful people look and listen before crossing a steam-railroad track, it is not the province of the court to say that a person looking must see, or listening must hear, at his peril; the traveler being bound only to make reasonable efforts to see and hear.

4. SAME—STREET RAILROAD.
The mandatory duty to look and listen is not applied with the same rigidity to pedestrians crossing street-railroad tracks at intersecting streets, it being the duty of the railroad company to have its cars under control as they approach such crossings.

5. SAME—NEGLIGENCE OF RAILROAD COMPANY.
Evidence that a street car was propelled at a very rapid rate over an intersecting street, without any signal or warning, and without a bright headlight, and that the motorman had his face turned towards the rear of the car when it struck plaintiff, who was crossing the street, was sufficient to warrant a finding of negligence on the part of the defendant.

Van Brunt, P. J., and McLaughlin, J., dissenting.

Appeal from trial term, New York county.

Action by James Mitchell against the Third Avenue Railroad Company. From an order dismissing the complaint pursuant to a nonsuit granted on the trial at the close of plaintiff's case, he appeals. Reversed.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, PATTERSON, and LAUGHLIN, JJ.

Sumner B. Styles, for appellant.
Eugene Treadwell, for respondent.

LAUGHLIN, J. On the night of the 8th of May, 1898, at 1:30 a. m., plaintiff was walking alone, smoking a cigar, going westerly on the northerly sidewalk of 108th street, and while passing over the northerly cross walk of 3d avenue was struck by a street car coming from the north on the westerly track, and sustained injuries, to recover for which this action is brought. The night was dark, but there was an arc electric light on the corner. Plaintiff testified that he looked up and down 3d avenue before stepping from the curbstone onto the cross walk, and again just as he stepped upon the easterly track, and that he saw no headlight or other indication

of the approach of a car, and heard no gong or bell. Plaintiff says that his eyesight was "pretty fair"; that there was no obstruction to his view up the avenue; that the avenue was lit up on both sides, with gas; that he could see the block to 109th street, and objects on it clearly, and then says that, when he looked around uptown, he guessed it was about one-half the block that he saw; could not say how far he saw up the block, and did not know whether he saw the length of the block or not; that as he was upon the west track, and about to step off on the west side, the car struck him; that he did not see the car until it struck him; that he did not look again after stepping upon the easterly track; and that the car, after striking him, ran at least a block before stopping. A passenger on the downtown car, which struck plaintiff, who was seated near the front, looking out the window, testified, in substance, that the motorman did not ring the bell; that the headlight must have been dim; that he did not think there was much of a headlight, but was not positive about it; that the motorman was looking towards the rear of the car at the time of the accident; that the car was going fast,—at the regular speed for that time of night; that the car threw plaintiff some distance, and did not stop for some distance after striking him; that he saw plaintiff coming across the easterly track, and at that time the car was quite a distance away,—two or three houses from the corner; that the car was going at such a rate of speed that it did not take it long to get to where plaintiff was; that the car was lighted inside; that it was a dark night, and you could see pretty plainly, but not a great distance; that the last he saw of plaintiff he was on the track, and the car was about 10 or 12 feet from him, and he was struck just as he was stepping over the westerly rail. Another passenger, who was on the rear platform, testified that the car was lighted; that he did not notice about the headlight, but that he did not hear any bell.

We think this constituted a prima facie case for submission to the jury. It cannot be said, as matter of law, that plaintiff, assuming his testimony to be true, omitted any precaution that a man of ordinary care and prudence would have taken to discover the approach of a street car. Costello v. Railroad Co., 161 N. Y. 317, 55 N. E. 897; Conley v. Railway Co., 22 App. Div. 321, 47 N. Y. Supp. 738; Schwarzbaum v. Railroad Co., 54 App. Div. 164, 66 N. Y. Supp. 367; Id. (Sup.; April term, 1901) 69 N. Y. Supp. 1095; Legare v. Railway Co. (Sup.; April term, 1901) 70 N. Y. Supp. 718; Frank v. Railway Co., 58 App. Div. 100, 68 N. Y. Supp. 537; Lawson v. Railway Co., 40 App. Div. 307, 57 N. Y. Supp. 997; Degraw v. Railroad Co., 49 App. Div. 29, 63 N. Y. Supp. 296. According to his evidence, he diligently exercised his faculties of sight and hearing without avail. The rule as to when the court may and may not decline to submit the question of contributory negligence to the jury is well stated in Kettle v. Turl, 162 N. Y. 255, 56 N. E. 626, as follows:

"The question of contributory negligence is generally one of fact to be determined by the jury, and it is not within the province of the court. It is only where it clearly appears from the circumstances or is proved by uncontroverted evidence that the party injured has by his own acts or

neglect contributed to the injury that the court can determine that question. The cases are exceptional where it can be held that contributory negligence was so conclusively established that nothing was left, either of inference or of fact, to be determined by a jury."

Quite recently the court of appeals has clearly pointed out the distinction between the authority of the court to set aside a verdict as against the weight of evidence and to nonsuit or direct a verdict without submitting the facts to the jury. McDonald v. Railway Co., 167 N. Y. 66, 60 N. E. 282. In that case Judge Martin, writing for the court, says:

"While in many cases, even where the evidence is sufficient to sustain it, a verdict may be properly set aside and a new trial ordered, yet that in every such case the trial court may, whenever it sees fit, direct a verdict, and thus forever conclude the parties, has no basis in the law, which confides to juries, and not to courts, the determination of the facts in this class of cases. We think it cannot be correctly said in any case where the right of trial by jury exists, and the evidence presents an actual issue of fact, that the court may properly direct a verdict. So long as a question of fact exists, it is for the jury, and not for the court. If the evidence is insufficient, or if that which has been introduced is conclusively answered, so that, as a matter of law, no question of credibility or issue of fact remains, then, the question being one of law, it is the duty of the court to determine it. But, whenever a plaintiff has established facts or circumstances which would justify a finding in his favor, the right to have the issue of fact determined by a jury continues, and the case must ultimately be submitted to it. The credibility of witnesses, the effect and weight of conflicting and contradictory testimony, are all questions of fact, and not questions of law. If a court of review, having power to examine the facts, is dissatisfied with the verdict because against the weight or preponderance of evidence, it may be set aside; but a new trial must be granted before another jury, so that the issue of fact may be ultimately determined by the tribunal to which these questions are confided. If there is no evidence to sustain an opposite verdict, a trial court is justified in directing one, not because it would have authority to set aside an opposite one, but because there was an actual defect of proof, and hence, as a matter of law, the party was not entitled to recover."

Even the judicially prescribed rule of care and caution on the part of a pedestrian approaching a steam-railroad highway crossing at grade does not require evidence of more care than was exercised by plaintiff, to carry a case to the jury. Lewin v. Railroad Co., 165 N. Y. 667, 59 N. E. 301 (for facts, see 52 App. Div. 69, 65 N. Y. Supp. 49); Henavie v. Railroad Co., 166 N. Y. 280, 59 N. E. 901; Zwack v. Railroad Co., 160 N. Y. 362, 54 N. E. 785; Judson v. Railroad Co., 158 N. Y. 597, 53 N. E. 514. The courts have taken judicial notice of the fact that ordinarily careful people look and listen before crossing a steam-railroad track, and so all are held to an observance of this duty as matter of law. It is not, however, the province of the court to say that a party looking must see, or listening must hear, at his peril. The traveler is only bound to make such reasonable efforts to see and hear as would be made by a careful and prudent man under like circumstances. Shaw v. Jewett, 86 N. Y. 616; Greany v. Railroad Co., 101 N. Y. 419, 424, 425, 5 N. E. 425. This mandatory duty of looking and listening is not applied with the same rigidity to pedestrians crossing (at intersecting streets) street-railroad tracks laid in the public streets. Street cars can be readily stopped, or the speed slackened, and it is the duty of a street-

railroad company to have its cars under control as they approach the crossing of intersecting streets. At such points they have no greater rights than the pedestrians crossing their tracks. Dunican v. Railway Co., 39 App. Div. 497, 57 N. Y. Supp. 326. If the testimony of plaintiff is to be believed,—and his credibility is for the jury (Williams v. Railroad Co., 155 N. Y. 158, 49 N. E. 672),—he certainly exercised some degree of care and caution. Whether his failure to discover the approach of the car was owing to the location of the electric light and atmospheric conditions, or to the fact that there was not a bright headlight upon the car, or to the fact that he is mistaken or untruthful in his testimony with respect to looking, were all questions of fact for the jury; and they may not be disposed of as matters of law without invading the province of the jury.

The evidence clearly warranted a finding of negligence on the part of the defendant. It tended to show that the car was propelled at a very rapid rate of speed over an intersecting street without any signal or warning, and, at least, without a bright headlight; and the motorman, instead of having his car under control, and keeping an outlook for those lawfully traveling the street, had his face turned towards the rear of the car.

The judgment should be reversed, and a new trial granted, with costs to appellant to abide the event. All concur, except VAN BRUNT, P. J., and McLAUGHLIN, J., who dissent.