DETERMINED IN THE

# FOURTH DEPARTMENT

IN THE

## APPELLATE DIVISION,

### 𝔒𝔠𝔱𝔬𝔟𝔢𝔯, 1903.

WELTHY J. BROWNE, as Executrix, etc., of L. HARRIS BROWNE, Deceased, Respondent, v. THE NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY, Appellant.[*]

*Negligence — what is evidence that an engine bell was not rung — when a failure of proof that the injured party looked is fatal, although had he looked he could not have discovered the engine — proof that he did look — failure to ring the bell the proximate cause of the injury.*

In an action brought to recover damages resulting from the death of the plaintiff's intestate, it appeared that north of the city of Syracuse, N. Y., the defendant's railroad embankment, which is about twelve or fourteen feet high, is crossed by a street substantially at right angles. There are two freight tracks upon this embankment which extend east and west, the southerly track being used for west-bound trains and the northerly track for east-bound trains. The street is on a level with the surrounding country until it reaches a point about two hundred feet south of the crossing, when the grade ascends gradually to the top of the embankment. In approaching the crossing from the point where the grade ascends, the view of the tracks, both to the east and the west, is unobstructed for a considerable distance.

The intestate was an intelligent farmer, sixty-two years of age, possessed of good hearing and eyesight, and was entirely familiar with the crossing. On the evening of the day of the accident, it being then dark, with a slight flurry of snow in the air, the intestate, who was seated in a light market wagon drawn by a gentle horse, drove upon the crossing from the south. A freight train, traveling about eighteen miles an hour, was then approaching the crossing from the east on the southerly track. The headlight of the locomotive drawing this freight train was lighted and the train was making its usual noise.

---

[*] This case was decided in September, 1903.

The intestate was first seen upon the south track about fifteen rods in front of the approaching freight train. He was sitting upright and his horse was walking. He continued to proceed in that manner without, so far as appeared by any direct evidence, looking in either direction, stopping or listening, until he reached the northerly rail of the north track, when he was struck and instantly killed by a "pusher" engine which was approaching from the east on the northerly track at the rate of thirty miles an hour. This pusher engine was running backward, with the headlight facing the east. There was a small light, called a marker, on the end facing the west, but it could only be seen a short distance, except by a person directly in front of it.

The only eye-witness of the accident, who was about one hundred and fifty feet north of the crossing and was apparently on the alert, testified that he did not hear the bell ring or the whistle blow on the pusher, but stated that he was not paying any attention to the bell. The engineer and fireman upon the pusher both testified positively that its bell was being rung and that its whistle was sounded as it approached the crossing.

The trial court asked the jury to find whether or not the deceased looked and listened as he approached the crossing and yet failed to discover the approach of the "pusher," and charged, in substance, that if he did they might find that he was not guilty of contributory negligence; and also that, if they found he did not so look and listen, they might still find that he was free from negligence, provided they found that if he had looked and listened he could not have discovered its approach in time to avoid the accident.

The jury found a verdict in favor of the plaintiff. The defendant made no motion for a new trial, but took an appeal from the judgment.

*Held*, upon such an appeal, that the testimony of the eye-witness was sufficient, under all the facts and circumstances attending the accident, to furnish some evidence that the bell was not ringing and that the whistle was not sounded;

That, for the purposes of the appeal, it must be assumed that the jury found that the deceased did look and listen, and that if there was a total failure of proof in that regard, the judgment should be reversed, notwithstanding that the jury might have found that if the intestate had looked and listened, he would not have discovered the approaching train;

That the evidence, however, of the intestate's actions and of the circumstances attending the accident, justified a finding that the intestate had looked and listened as he approached the crossing;

That it could not be said, as matter of law, that if the intestate discovered the freight train approaching in such a manner as would render it proper for him to attempt to cross in front of it, he was guilty of negligence because he neglected to take such precautions as would enable him to determine whether or not the "pusher" was approaching;

That the question whether the failure to ring the bell or sound the whistle on the pusher as it approached the crossing was the proximate cause of the accident, was one of fact for the jury.

APPEAL by the defendant, The New York Central and Hudson River Railroad Company, from a judgment of the Supreme Court

in favor of the plaintiff, entered in the office of the clerk of the county of Onondaga on the 15th day of December, 1902, upon the verdict of a jury for $2,000.

The action was commenced on the 25th day of July, 1902, to recover damages for the death of plaintiff's intestate, which occurred on the 3d day of December, 1901, alleged to have been caused through the negligence of the defendant.

*Frank Hiscock,* for the appellant.

*George W. Driscoll,* for the respondent.

McLENNAN, J. :

The accident occurred north of the city of Syracuse, N. Y., where Seventh North street crosses, substantially at right angles, the two freight tracks of the defendant's railroad, which extend east and west, and are upon an embankment twelve to fourteen feet high. The southerly track is usually used for the passage of trains going west, and the northerly track for east-bound trains. The street is on a level with the surrounding country until a point about 200 feet south of the crossing is reached, when the grade ascends gradually to the top of the embankment. In approaching the crossing from that point there is a continuous unobstructed view of a train coming from the east for over 2,000 feet. The view to the west is also unobstructed for a considerable distance.

At about six o'clock in the evening of the day in question, it being then dark, with a slight flurry of snow in the air, the plaintiff's intestate, who was sixty-two years of age, bright, active and intelligent, a farmer by occupation and entirely familiar with the crossing and surroundings, was returning from the city of Syracuse to his home, in the town of Clay, several miles north of the city. He was driving a gentle horse, drawing a light market wagon, and was sitting upon an elevated seat in front.

An ordinary freight train, going about eighteen miles an hour, was approaching the crossing on the south track from the east; the headlight, which was lighted, threw its rays at least three hundred feet in front, and the train was making the usual noise. Plaintiff's intestate was first seen upon the south track, about fifteen rods in front of the approaching freight engine; he was

sitting upright; was driving north, his horse upon a walk.  Going in that manner, and, so far as appears by any direct evidence, without looking in either direction, stopping or listening, he crossed the first or south track, made the distance between the two tracks (eight feet), and had reached the northerly rail of the north track, when he was struck and instantly killed by a " pusher " engine, also approaching the crossing from the east on the north track at the rate of thirty miles an hour.  It was running backward, the tender being behind or west of the engine ; there was no headlight on the west end, but there was a headlight on the front of the engine facing the east.  There was a small light, a " marker," on the end of the tender facing the west, but it could only be seen a short distance, except by a person directly in front.

The only eye-witness to the accident was a Mr. Young, who was about 150 feet north of the crossing, and apparently on the alert. He described what was done in the operation of the freight train, and in detail just how the accident occurred.  He testified that he did not hear the bell ring or the whistle blow on the " pusher," but stated that he was not paying any attention to the bell.  On the other hand, the engineer and fireman upon the " pusher " both testify positively that its bell was being rung and that the whistle was sounded as it approached the crossing.

This was the only issue involving defendant's negligence which was submitted to the jury by the learned trial court.  They were instructed that if they found these signals were given the plaintiff could not recover, but that if they were not given they might find the defendant guilty of negligence.  By the verdict the jury said, in substance, that such signals were not given.

The finding is challenged and, therefore, at the outset we must determine whether or not the evidence was sufficient to support it. It can only be sustained, if at all, upon the evidence of the witness Young, which concededly was negative in its character, and, in substance, was only to the effect that he did not hear the signals, although he was in such position that he could have heard them if given.  If the witness had said, " I was listening for the bell or whistle," or " I was thinking of them at the time of the accident, but did not hear them," his testimony would have required the sub-

mission of the question to the jury, notwithstanding the testimony of the engineer and fireman. (*Henavie* v. *N. Y. C. & H. R. R. R. Co.*, 166 N. Y. 280.) In that case the court said : " A witness shown to have been in a position to hear, who testifies that he observed the engine but did not hear the bell ring, furnishes some evidence that the bell was not ringing, and if he is positive that the bell was not rung he furnishes strong evidence that the bell was not ringing."

In the case at bar the witness Young was in a position to hear. He testified that he observed the " pusher," described the relative position of its engine and tender, the location and character of the lights upon it, and noted or calculated its rate of speed. In addition, he saw the headlight on the freight engine and heard the noise of the train ; observed its distance from the crossing when the deceased was on the southerly track ; calculated its rate of speed and observed how the deceased was driving ; described fully and in detail just how the accident occurred, but testified that he did not hear the bell or whistle. The testimony of Young, considering all the facts and circumstances, " furnishes some evidence that the bell was not ringing " and that the whistle was not sounded. No question as to the preponderance of evidence is presented by this appeal because no motion for a new trial was made on the minutes of the court upon the ground that the verdict of the jury was against the weight of the evidence or upon any other ground, and we are, therefore, confined to a consideration of the proposition : Was there or was there not sufficient evidence, considering all the facts and circumstances, as well as the statements of witnesses, to make the question whether or not the bell on the " pusher " was rung or the whistle sounded a question of fact for the jury ? Upon the authority of the case referred to we are constrained to hold that the finding of the jury upon that question ought to be regarded as conclusive.

Was the evidence sufficient to support the finding that the plaintiff's intestate was free from contributory negligence ?

The learned trial court asked the jury to find whether or not the deceased looked and listened as he approached the crossing and yet failed to discover the approach of the " pusher," and charged, in substance, that if he did they might find that he was not guilty of contributory negligence ; and also that, if they found he did not so

look and listen, they might still find that he was free from negligence, provided they found that if he had looked and listened he could not have discovered its approach in time to avoid the accident.

The rule thus stated correctly defines the obligation resting upon a traveler upon a highway when approaching a railroad crossing. In other words, he must look and listen, unless the taking of such precaution would be wholly unavailing. (*Smedis* v. *Brooklyn & Rockaway Beach R. R. Co.*, 88 N. Y. 13 ; *Henavie* v. *N. Y. C. & H. R. R. R. Co., supra*.)

It must be assumed that the jury found the deceased did look and listen, and, therefore, was exercising reasonable care and prudence. The learned counsel for the appellant urges that there is no evidence to support such finding and that the submission of that question to the jury constituted reversible error.

If there was a total failure of proof in that regard the appellant's contention must prevail, notwithstanding the jury might have found that if the deceased had looked and listened he could not have discovered the approaching train. (*Fejdowski* v. *D. & H. Canal Co.*, 168 N. Y. 500.)

Concededly, there was no direct evidence which tended to show that plaintiff's intestate looked or listened, or took any precautions to ascertain whether or not it was prudent for him to attempt to cross defendant's tracks.  He was first seen on the southerly track, sitting upright, looking straight ahead, driving his horse upon a walk, and he thus continued until he reached the northerly track, where he was struck and killed.  In a case of this kind it is not essential that freedom from negligence should be established by direct proof.  If the circumstances are such as fairly lead to that conclusion it is sufficient. (*Pruey* v. *N. Y. C. & H. R. R. R. Co.*, 41 App. Div. 158; affd., 166 N. Y. 616.)

Whether or not the deceased was guilty of negligence must be determined by what he did or omitted to do before going upon the first or southerly track, for when he reached that point, upon an embankment twelve to fourteen feet high, with the freight train only fifteen rods away, approaching at the rate of eighteen miles an hour, it was impossible for him to turn back, and to stop would have been equally perilous, and, besides, there was nothing to indicate

212 ,BROWNE *v.* N. Y. CENTRAL & H. R. R. R. CO.

FOURTH DEPARTMENT, OCTOBER TERM, 1903.          [Vol. 87.

that he was in a place of danger. At least, if he was then in a
place of danger, and if he was led into such position through the
negligence of defendant, it cannot complain because he did not
do something other or different from what he did do to extricate
himself.

. What are the circumstances which lead to the conclusion that the
deceased did look and listen as he approached defendant's tracks?
.He was entirely familiar with the crossing; was in the full possession
of all his faculties; his hearing and eyesight were good; while travel-
ing a distance of more than two hundred feet on the highway the
freight train was in full view from a point more than half a mile to
the east; it was upon an embankment twelve to fourteen feet high;
the headlight upon the engine was lighted and threw its rays almost
directly across his path; the train of freight cars was making the
usual rumbling noise. There was absolutely nothing to prevent the
deceased from seeing and hearing such train. Did he see and hear
it? His actions indicate that he did. He drove leisurely in front
of it, giving himself ample time to pass ahead of it in safety. In
fact, when he had cleared the southerly track it was still several
rods away. All these circumstances establish almost as conclusively
as any fact can be established by circumstances that the deceased
knew the freight train was approaching. It might almost be said
that he could not help knowing of its approach unless he was drunk
or asleep, of which there is no pretense; and if he had such knowl-
edge it was obtained by looking or listening as he was approaching
the crossing.

If a house had been burning, and enveloped in flames, upon the
side of the street on which the deceased was passing, with nothing
to obstruct his view, would a jury, even in the absence of direct
proof, be justified in concluding that he saw it? If there had been
an explosion of dynamite close to the highway upon which the
deceased was traveling, and it appeared that his hearing was good,
would a jury be justified in finding, in the absence of any other
facts, that he heard it? Common experience compels an affirmative
answer to each question. The freight train was equally visible, its
noise quite as distinct.

As was said in *Pruey* v. *N. Y. C. & H. R. R. R. Co.* (41 App.
Div. 158): " In a case where death ensues as a result of a collision

of this kind, and where there is no eye-witness of the occurrence, there is a relaxation of the rule requiring strict proof that the decedent was vigilant and observant as he advanced toward the track. The regulation exists in its integrity, but the proofs presented may be inferential, may be dependent upon circumstances, and still be adequate to satisfy the court of the absence of contributory negligence.   As was said in *Noble* v. *The New York Central & Hudson River Railroad Co.* (20 App. Div. 42) : ' In actions to recover damages for negligence resulting in death, where there are no eye-witnesses of the accident, the freedom of the deceased from contributory negligence may be established by proof of facts and circumstances from which it may fairly be inferred that the deceased was not at fault.'   ( *Wieland* v. *D. & H. Canal Co.*, 30 App. Div. 85 ; *Chisholm* v. *The State*, 141 N. Y. 246.) "

If anything was disclosed by the evidence which prevented plaintiff's intestate from seeing or hearing the freight train even temporarily, if he had been struck by it, had attempted to take any measures to escape collision with it, or had done any other act indicating that he did not know of its approach, it would be held unhesitatingly, under all the circumstances, that he did not look or listen and thus know of the approach of the freight train, and, therefore, that he was guilty of contributory negligence.   The evidence, however, all points to the conclusion that he did know of the approach of the train and governed himself accordingly, and that such knowledge was gained by looking and listening.

It cannot be said, as matter of law, that if the deceased looked and listened as he approached the crossing, and thereby discovered the freight train was approaching in such manner that he could safely cross in front of it, he was guilty of negligence because he did not take such precautions as would enable him to determine whether or not the "pusher" was approaching the crossing from the same direction.   The "pusher" was wholly hidden from his view by the freight train.   It was at least somewhat unusual for an engine to be going west on the east-bound track, and, as the jury found, it had given and was giving no signal of its approach. Indeed, it would seem that a person of the greatest caution might, under like circumstances, have deemed it safe and prudent to attempt, as did the deceased, to make the crossing in question.

We conclude that the evidence was sufficient to sustain the finding of the jury that plaintiff's intestate was free from the charge of contributory negligence, and that the charge of the court in that regard does not present reversible error.

The only remaining question requiring consideration is whether or not the negligence of the defendant, to wit, its failure to ring the bell or sound the whistle on the " pusher " as it approached the crossing, was the proximate cause of the accident. It cannot be said, as matter of law, that if the bell had been rung and the whistle sounded on the " pusher " engine the deceased would not have heard it and refrained from going upon the crossing. There is no evidence tending to show that the bell of the freight engine was ringing or that its whistle had been sounded, and it is, therefore, entirely reasonable and natural to suppose that if the bell upon the " pusher " had been rung and if its whistle had been blown the deceased would have heard and heeded it. At all events, the evidence presented a question for the jury rather than for an appellate court to determine, and under the circumstances we are not disposed to disturb its verdict.

In conclusion, it may be said that the manner in which the defendant's trains were being operated at the time in question presented a most dangerous situation to a traveler upon the highway, and one which would be quite likely to lead a person of ordinary care and prudence attempting to make the crossing in question into danger. The freight train was in such position and being operated in such manner that a person approaching the crossing could not fail to see and hear it. It was going at such rate of speed and was at such distance from the crossing as to make it practically certain that a person situate as was the plaintiff's intestate could safely cross in front of it; but on the opposite side of such train and wholly hidden from view a light engine going at substantially double the rate of speed of the freight train, without giving any warning or notice of its approach, dashed from behind it and reached the crossing just in time to strike plaintiff's intestate and cause the injury complained of.

We are of the opinion that the evidence is sufficient (there being no question as to the weight or preponderance of the evidence) to support the findings of the jury that the defendant was guilty of

negligence which was the proximate cause of the accident, and that the plaintiff's intestate was free from contributory negligence.

It follows that the judgment appealed from should be affirmed, with costs.

Judgment affirmed, with costs.

All concurred, except ADAMS, P. J., not voting, and HISCOCK, J., not sitting.