BROWN v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Appellate Division, Fourth Department. September 29, 1903.)

1. RAILROADS—CROSSING ACCIDENT—GIVING SIGNALS—EVIDENCE.

Though the engineer and fireman on a locomotive which killed plaintiff's intestate at a crossing testified that its bell was rung and its whistle blown as it approached, there is sufficient evidence for the jury to find that such signals were not given in the testimony of one who was 150 feet away, and saw the accident, and observed and detailed all the circumstances, and testified that he did not hear the bell ring or the whistle blow, though stating that he was not paying any attention to the bell.

2. SAME—LOOKING AND LISTENING—EVIDENCE.

Plaintiff's intestate, after crossing the first track of a railroad, 15 rods in front of a freight train, running 18 miles an hour, making the usual noise, and having a lighted headlight on its locomotive, and which could be seen when a half mile distant, from any point within 200 feet of the crossing, was struck and killed by a small engine on the second track, running backward, in the same direction as the train, at a speed of 30 miles an hour, without signals, and with nothing but a small light at the end of the tender, which could be seen only a short distance, except by one directly in front. *Held,* that the circumstances justified a finding that he looked and listened, though he was first seen when on the first track, and was then looking directly in front of him.

3. SAME—PROXIMATE CAUSE—EVIDENCE.

A finding that omission of signals by an engine, which, running twice as fast as a freight train on the first track, came out from behind it and struck one on the second track, after he had crossed the first track, 15 rods in front of the freight train, was the proximate cause of the accident, is justified by the circumstances, there being no evidence that the freight train was making noises which would have prevented the signals being heard had they been given.

Appeal from Trial Term.

¶ 1. See Railroads, vol. 41, Cent. Dig. § 1161.

Action by Welthy J. Brown, executrix of L. Harris Brown, deceased, against the New York Central & Hudson River Railroad Company for death of intestate. From a judgment on a verdict for plaintiff, defendant appeals. Affirmed.

Argued before ADAMS, P. J., and McLENNAN, SPRING, and WILLIAMS, JJ.

Frank Hiscock, for appellant.

George W. Driscoll, for respondent.

McLENNAN, J. The accident occurred north of the city of Syracuse, N. Y., where Seventh North street crosses, substantially at right angles, the two freight tracks of the defendant's railroad, which extend east and west, and are upon an embankment 12 to 14 feet high. The southerly track is usually used for the passage of trains going west, and the northerly track for east-bound trains. The street is on a level with the surrounding country until a point about 200 feet south of the crossing is reached, when the grade ascends gradually to the top of the embankment. In approaching the crossing from that point there is a continuous unobstructed view of a train coming from the east for over 2,000 feet. The view to the west is also unobstructed for a considerable distance. At about 6 o'clock in the evening of the day in question, it being then dark, with a slight flurry of snow in the air, the plaintiff's intestate, who was 62 years of age, bright, active, and intelligent, a farmer by occupation, and entirely familiar with the crossing and surroundings, was returning from the city of Syracuse to his home in the town of Clay, several miles north of the city. He was driving a gentle horse, drawing a light market wagon, and was sitting upon an elevated seat in front. An ordinary freight train, going about 18 miles an hour, was approaching the crossing from the east. The headlight, which was lighted, threw its rays at least 300 feet in front, and the train was making the usual noise. Plaintiff's intestate was first seen upon the south track about 15 rods in front of the approaching freight engine; he was sitting upright; was driving north, his horse upon a walk. Going in that manner, and, so far as appears by any direct evidence, without looking in either direction, stopping or listening, he crossed the first or south track, made the distance between the two tracks (eight feet), and had reached the northerly rail of the north track, when he was struck and instantly killed by a "pusher" engine, also approaching the crossing from the east on the north track, at the rate of 30 miles an hour. It was running backward, the tender being behind or west of the engine. There was no headlight on the west end, but there was a headlight on the front of the engine, facing the east. There was a small light, a "marker," on the end of the tender facing the west, but it could only be seen a short distance, except by a person directly in front.

The only eyewitness to the accident was a Mr. Young, who was about 150 feet north of the crossing, and apparently on the alert. He described what was done in the operation of the freight train, and in detail just how the accident occurred. He testified that he did not hear the bell ring or the whistle blow on the "pusher," but stated that

he was not paying any attention to the bell. On the other hand, the engineer and fireman upon the "pusher" both testify positively that its bell was being rung and that the whistle was sounded as it approached the crossing.

This was the only issue involving defendant's negligence which was submitted to the jury by the learned trial court. They were instructed that if they found these signals were given the plaintiff could not recover, but that if they were not given they might find the defendant guilty of negligence. By the verdict the jury said, in substance, that such signals were not given.

The finding is challenged, and therefore at the outset we must determine whether or not the evidence was sufficient to support it. It can only be sustained, if at all, upon the evidence of the witness Young, which concededly was negative in its character, and in substance was only to the effect that he did not hear the signals, although he was in such position that he could have heard them if given. If the witness had said, "I was listening for the bell or whistle," or "I was thinking of them at the time of the accident but did not hear them," his testimony would have required the submission of the question to the jury, notwithstanding the testimony of the engineer and fireman.

Henavie v. N. Y. C. & H. R. R. R. Co.; 166 N. Y. 280, 59 N. E. 901. In that case the court said:

"A witness shown to have been in a position to hear, who testifies that he observed the engine but did not hear the bell ring, furnishes some evidence that the bell was not ringing, and if he is positive that the bell was not rung he furnishes strong evidence that the bell was not ringing."

In the case at bar the witness Young was in a position to hear. He testified that he observed the "pusher," described the relative position of its engine and tender, the location and character of the lights upon it, and noted or calculated its rate of speed. In addition, he saw the headlight on the freight engine and heard the noise of the train; observed its distance from the crossing when the deceased was on the southerly track; calculated its rate of speed and observed how the deceased was driving; described fully and in detail just how the accident occurred, but testified that he did not hear the bell or whistle. The testimony of Young, considering all the facts and circumstances, "furnishes some evidence that the bell was not ringing" and that the whistle was not sounded. No question as to the preponderance of evidence is presented by this appeal, because no motion for a new trial was made on the minutes of the court, upon the ground that the verdict of the jury was against the weight of the evidence, or upon any other ground, and we are therefore confined to a consideration of the proposition: Was there or was there not sufficient evidence, considering all the facts and circumstances as well as the statements of witnesses, to make the question whether or not the bell on the "pusher" was rung or the whistle sounded a question of fact for the jury? Upon the authority of the case referred to we are constrained to hold that the finding of the jury upon that question ought to be regarded as conclusive.

Was the evidence sufficient to support the finding that the plaintiff's intestate was free from contributory negligence? The learned

trial court asked the jury to find whether or not the deceased looked and listened as he approached the crossing, and yet failed to discover the approach of the "pusher," and charged, in substance, that if he did they might find that he was not guilty of contributory negligence; and also that if they found he did not so look and listen they might still find that he was free from negligence, provided they found that if he had looked and listened he could not have discovered its approach in time to avoid the accident. The rule thus stated correctly defines the obligation resting upon a traveler upon a highway when approaching a railroad crossing. In other words, he must look and listen, unless the taking of such precaution would be wholly unavailing. Smedis v. Brooklyn & Rockaway Beach R. R. Co., 88 N. Y. 13; Henavie v. N. Y. C. & H. R. R. R. Co., supra. It must be assumed that the jury found the deceased did look and listen, and therefore was exercising reasonable care and prudence. The learned counsel for the appellant urges that there is no evidence to support such finding, and that the submission of that question to the jury constituted reversible error.

If there was a total failure of proof in that regard, the appellant's contention must prevail, notwithstanding the jury might have found that if the deceased had looked and listened he could not have discovered the approaching train. Fejdowski v. D. & H. Co., 168 N. Y. 500, 61 N. E. 888.

Concededly there was no direct evidence which tended to show that plaintiff's intestate looked or listened or took any precautions to ascertain whether or not it was prudent for him to attempt to cross defendant's tracks. He was first seen on the southerly track, sitting upright, looking straight ahead, driving his horse upon a walk, and he thus continued until he reached the northerly track, where he was struck and killed. In a case of this kind it is not essential that freedom from negligence should be established by direct proof. If the circumstances are such as fairly lead to that conclusion it is sufficient. Pruey v. N. Y. C. & H. R. R. R. Co., 41 App. Div. 158, 58 N. Y. Supp. 797, affirmed in 166 N. Y. 616, 59 N. E. 1129.

Whether or not the deceased was guilty of negligence must be determined by what he did or omitted to do before going upon the first or southerly track, for when he reached that point, upon an embankment 12 to 14 feet high, with the freight train only 15 rods away approaching at the rate of 18 miles an hour, it was impossible for him to turn back, and to stop would have been equally perilous; and, besides, there was nothing to indicate that he was in a place of danger. At least, if he was then in a place of danger, and if he was led into such position through the negligence of defendant, it cannot complain because he did not do something other or different from what he did do to extricate himself.

What are the circumstances which lead to the conclusion that the deceased did look and listen as he approached defendant's tracks? He was entirely familiar with the crossing; was in the full possession of all his faculties; his hearing and eyesight were good; while traveling a distance of more than 200 feet on the highway the freight train was in full view from a point more than half a mile to the east;

it was upon an embankment 12 to 14 feet high; the headlight upon the engine was lighted and threw its rays almost directly across his path; the train of freight cars was making the usual rumbling noise. There was absolutely nothing to prevent the deceased from seeing and hearing such train. Did he see and hear it? His actions indicate that he did. He drove leisurely in front of it, giving himself ample time to pass ahead of it in safety. In fact, when he had cleared the southerly track it was still several rods away. All these circumstances establish almost as conclusively as any fact can be established by circumstances that the deceased knew the freight train was approaching. It might almost be said that he could not help knowing of its approach unless he was drunk or asleep, of which there is no pretense, and if he had such knowledge it was obtained by looking or listening as he was approaching the crossing.

If a house had been burning and enveloped in flames upon the side of the street on which the deceased was passing, with nothing to obstruct his view, would a jury, even in the absence of direct proof, be justified in concluding that he saw it? If there had been an explosion of dynamite close to the highway upon which the deceased was traveling, and it appeared that his hearing was good, would a jury be justified in finding, in the absence of any other facts, that he heard it? Common experience compels an affirmative answer to each question. The freight train was equally visible, its noise quite as distinct.

As was said in Pruey v. N. Y. C. & H. R. R. R. Co., 41 App. Div. 158, 58 N. Y. Supp. 797:

"In a case where death ensues as a result of a collision of this kind, and where there is no eyewitness of the occurrence, there is a relaxation of the rule requiring strict proof that the decedent was vigilant and observant as he advanced toward the track. The regulation exists in its integrity, but the proofs presented may be inferential, may be dependent upon circumstances, and still be adequate to satisfy the court of the absence of contributory negligence. As was said in Noble v. The New York Central & Hudson River Railroad Co., 20 App. Div. 42, 46 N. Y. Supp. 647: 'In actions to recover damages for negligence resulting in death, where there are no eyewitnesses of the accident, the freedom of the deceased from contributory negligence may be established by proof of facts and circumstances from which it may fairly be inferred that the deceased was not at fault.' Wieland v. D. & H. Canal Co., 30 App. Div. 85, 51 N. Y. Supp. 776; Chisholm v. The State, 141 N. Y. 246, 36 N. E. 184."

If anything was disclosed by the evidence which prevented plaintiff's intestate from seeing or hearing the freight train, even temporarily, if he had been struck by it, had attempted to take any measures to escape collision with it, or had done any other act indicating that he did not know of its approach, it would be held unhesitatingly, under all the circumstances, that he did not look or listen, and thus know of the approach of the freight train, and therefore that he was guilty of contributory negligence. The evidence, however, all points to the conclusion that he did know of the approach of the train, and governed himself accordingly, and that such knowledge was gained by looking and listening.

It cannot be said, as matter of law, that if the deceased looked and listened as he approached the crossing, and thereby discovered the freight train was approaching in such manner that he could safely

cross in front of it, he was guilty of negligence because he did not take such precautions as would enable him to determine whether or not the "pusher" was approaching the crossing from the same direction. The "pusher" was wholly hidden from his view by the freight train. It was at least somewhat unusual for an engine to be going west on the east-bound track, and, as the jury found, it had given and was giving no signal of its approach. Indeed, it would seem that a person of the greatest caution might, under like circumstances, have deemed it safe and prudent to attempt, as did the deceased, to make the crossing in question.

We conclude that the evidence was sufficient to sustain the finding of the jury that plaintiff's intestate was free from the charge of contributory negligence, and that the charge of the court in that regard does not present reversible error.

The only remaining question requiring consideration is whether or not the negligence of the defendant, to wit, its failure to ring the bell or sound the whistle on the "pusher" as it approached the crossing, was the approximate cause of the accident. It cannot be said, as matter of law, that if the bell had been rung and the whistle sounded on the "pusher" engine the deceased would not have heard it and refrained from going upon the crossing. There is no evidence tending to show that the bell of the freight engine was ringing or that its whistle had been sounded, and it is therefore entirely reasonable and natural to suppose that if the bell upon the "pusher" had been rung and if its whistle had been blown the deceased would have heard and heeded it. At all events, the evidence presented a qustion for the jury to determine rather than an appellate court, and under the circumstances we are not disposed to disturb its verdict.

In conclusion it may be said that the manner in which the defendant's trains were being operated at the time in question presented a most dangerous situation to a traveler upon the highway, and one which would be quite likely to lead a person of ordinary care and prudence attempting to make the crossing in question into danger. The freight train was in such position and being operated in such manner that a person approaching the crossing could not fail to see and hear it. It was going at such a rate of speed and was at such distance from the crossing as to make it practically certain that a person situate as was the plaintiff's intestate could safely cross in front of it; but on the opposite side of such train, and wholly hidden from view, a light engine, going at substantially double the rate of speed of the freight train, without giving any warning or notice of its approach, dashed from behind it, and reached the crossing just in time to strike plaintiff's intestate and cause the injury complained of.

We are of the opinion that the evidence is sufficient (there being no question as to the weight or preponderance of the evidence) to support the findings of the jury that the defendant was guilty of negligence which was the approximate cause of the accident, and that the plaintiff's intestate was free from contributory negligence. It follows that the judgment appealed from should be affirmed, with costs.

Judgment affirmed, with costs. All concur, except ADAMS, P. J., not voting, and HISCOCK, J., not sitting.